1 | JINA L. CHOI (N.Y. Bar No. 2699718)
JEREMY E. PENDREY (Cal. Bar No. 187075)
2 |   pendreyj@sec.gov
E. BARRETT ATWOOD (Cal. Bar No. 291181)
3 |   atwoode@sec.gov
JOSHUA M. NEWVILLE (N.Y. Bar No. 4050001)
4 |   newvillej@sec.gov

5 | Attorneys for Plaintiff
SECURITIES AND EXCHANGE COMMISSION
6 | 44 Montgomery Street, Suite 2800
San Francisco, California 94104
7 | Telephone:  (415) 705-2500
Facsimile:  (415) 705-2501

8 |

9 |

10 | UNITED STATES DISTRICT COURT

11 | NORTHERN DISTRICT OF CALIFORNIA

12 | SAN FRANCISCO DIVISION

13 | CV 15  80  289MISC

14 | SECURITIES AND EXCHANGE COMMISSION,      Misc. No.

15 |            Applicant,

16 |       v.                                SECURITIES AND EXCHANGE
                                            COMMISSION'S NOTICE AND
17 | NETCIRQ, LLC                            APPLICATION FOR AN ORDER
                                            COMPELLING COMPLIANCE
                                            WITH ADMINISTRATIVE
18 |            Respondent.                  SUBPOENA and MEMORANDUM
                                            IN SUPPORT

19 |                                         Date Filed:  November 25, 2015

20 |                                         Hearing Date:  December 30, 2015

21 |

22 |

23 |

24 |

25 |

26 |

27 |

28 |

# **TABLE OF CONTENTS**

NOTICE AND APPLICATION ............................................................................................ 1

MEMORANDUM OF POINTS AND AUTHORITIES .................................................... 2

I.   INTRODUCTION ....................................................................................................... 2

II.  STATEMENT OF FACTS.......................................................................................... 3

     A.   The Commission's Investigation.......................................................... 3

     B.   NetCirq's Business ................................................................................ 4

     C.   The Commission's Subpoena to NetCirq ............................................ 5

     D.   NetCirq's Failure to Comply With the Commission's Subpoena.......... 7

III. ARGUMENT ................................................................................................................ 9

     A.   The Commission's Subpoena Should Be Enforced ............................... 9

          1.   The Commission is authorized to conduct this
              investigation .................................................................................. 10

          2.   The Commission followed all procedural requirements
              for issuance and service of the Subpoena to NetCirq ............... 11

          3.   The Subpoena to NetCirq seeks relevant and material
              information ..................................................................................... 11

IV.  CONCLUSION............................................................................................................ 13

i

1

## **TABLE OF AUTHORITIES**

2

<u>CASES</u>

3
4
*EEOC v. Children's Hosp. Med. Ctr. of N. Cal.*,
719 F.2d 1426 (9th Cir. 1983)..................................................................... 10, 11

5
*EEOC v. Federal Express Corp.*,
558 F.3d 842 (9th Cir. 2009 .......................................................................... 10

6
7
*SEC v. Arthur Young*, 584 F.2d 1018 (D.C. Cir. 1978) ........................................ 11

*SEC v. Jerry T. O'Brien, Inc.*, 467 U.S. 735 (1984) ......................................... 11

8
9
*SEC v. McCarthy*, 322 F.3d 650 (9th Cir. 2003)................................................... 9

10
*SEC v. Obioha*, No. 12-mc-801809, 2012 WL 4889286,
(N.D. Cal. Oct. 12, 2012) ............................................................................ 10

11
*SEC v. Sprecher*, 594 F.2d 317 (2d Cir. 1979) ................................................... 9

12
*United States v. Morton Salt Co.*, 338 U.S. 632 (1950) ....................................... 10
13

14

<u>STATUTES</u>

15
7 U.S.C. § 1(a)(18).................................................................................... 12

16
15 U.S.C. § 77e(e)....................................................................................... 4

17
15 U.S.C. § 77s(c)................................................................................... 3, 10

18
15 U.S.C. § 77t(a)...................................................................................... 10

19
15 U.S.C. § 77v(b)..................................................................................... 1, 9

20
15 U.S.C. § 78c(a)(68)................................................................................... 4

21
22
15 U.S.C. § 78o(a)..................................................................................... 2, 4

23
15 U.S.C. § 78u(a)....................................................................................... 3

24
15 U.S.C. § 78u(b)....................................................................................... 3

25
15 U.S.C. § 78u(c)....................................................................................... 1

26
15 U.S.C. § 78f(l)....................................................................................... 4

27

28

ii

REGULATIONS

17 C.F.R. § 201.150(c) ........................................................................ 11

17 C.F.R. § 201.150(d) ........................................................................ 11

17 C.F.R. § 201.232(c) ........................................................................ 11

17 C.F.R. § 203.8 ................................................................................. 11

Dodd-Frank Wall Street Reform and Consumer Protection
    Act, Pub. L. No. 111-203, 124 Stat. 1376 (2010) ............................... 4, 12

1

## NOTICE AND APPLICATION

2      PLEASE TAKE NOTICE that on December 30, 2015, at 10:00 a.m., or as soon as thereafter

3  as the matter can be heard, in the courtroom of the assigned General Duty Judge located at 450

4  Golden Gate Avenue, San Francisco, California, Applicant Securities and Exchange Commission will

5  and hereby do apply for an order compelling Respondent NetCirq, LLC to preserve documents and

6
   comply with the administrative subpoena issued by Applicant.

7
       This is an administrative subpoena enforcement action.  The Court has jurisdiction under

8
9  Section 22(b) of the Securities Act of 1933, 15 U.S.C. § 77v(b), and Section 21(c) of the Securities

10  Exchange Act of 1934, 15 U.S.C. § 78u(c).  Venue is appropriate under Section 22(a) of the

11  Securities Act of 1933, 15 U.S.C. § 77v(a), and Section 21(c) of the Securities Exchange Act, 15

12  U.S.C. § 78u(c).  This application is based on Respondent's failure to comply with a valid

13  administrative subpoena without excuse.  This application is supported by the accompanying

14
   Memorandum of Points and Authorities, the Declaration of Joshua M. Newville in support thereof,

15
   the proposed order, and such further evidence and argument as the Court may consider.

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## MEMORANDUM OF POINTS AND AUTHORITIES

Applicant Securities and Exchange Commission ("Commission") applies to the Court for an order enforcing an administrative subpoena issued by the Commission to NetCirq, LLC ("NetCirq"). Despite having been properly served with and acknowledging receipt of an administrative subpoena in May 2015 requiring it to produce documents to the Commission, and despite its CEO's admission that it had responsive documents, NetCirq has failed to produce any documents, without any justifiable reason. Since then, NetCirq's CEO has simply ignored Commission staff's repeated attempts to contact her. For the reasons set forth below, and in the accompanying Declaration of Joshua M. Newville ("Newville Decl.") and the Exhibits thereto, the Commission respectfully requests that the Court enter an order directing NetCirq to comply with the administrative subpoena that was issued to it on May 6, 2015 (the "Subpoena"), and certify its compliance accordingly, pursuant to the Commission's Proposed Order.

### I.    INTRODUCTION

The staff of the Commission is investigating whether certain entities may have violated the federal securities laws in connection with secondary market trading of shares of growth-stage private companies that have not yet conducted an initial private offering ("IPO"). Certain entities may have, among other things, improperly engaged in transactions that constitute security-based swaps in violation of the federal securities laws, or may have improperly engaged in secondary market trading of pre-IPO shares in violation of the registration requirements of Section 15(a) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. § 78o(a). These requirements are intended to make financial information and other details about such offerings fully transparent to investors, and limit transactions to platforms subject to appropriate levels of regulation.

According to its website, NetCirq purports to be creating a "private equity marketplace" that "resells private securities and portfolio interests creating a secondary market for private equity" and

"helps shareholders get liquidity by reselling [their] stock." Newville Decl. Ex. 3 at 2,4. NetCirq purports to have executed a number of securities transactions involving pre-IPO companies. The Commission issued the Subpoena to NetCirq seeking certain categories of documents in May 2015. Over five months have passed since NetCirq received the Subpoena, and no production has been provided. After receiving a document preservation request in April 2015, NetCirq's CEO admitted to the staff that she possessed responsive documents, and the company has had more than sufficient time to locate and produce them, yet NetCirq's CEO has ignored subsequent Commission staff attempts to contact her. Because NetCirq has refused to produce documents and has not identified the investors or shareholders with which it engaged in private securities transactions, the Commission has no other way to obtain documents responsive to the Subpoena. In sum, NetCirq has simply failed to comply with the Subpoena without providing any legitimate explanation.

## II.   STATEMENT OF FACTS

### A.   The Commission's Investigation.

On May 4, 2015, the Commission issued an Order Directing Private Investigation and Designating Officers to Take Testimony (the "Formal Order") pursuant to Section 20(a) of the Securities Act of 1933 ("Securities Act"), 15 U.S.C. § 77t(a), and Section 21(a) of the Exchange Act, 15 U.S.C. § 78u(a). Newville Decl. ¶4. Pursuant to Section 19(c) of the Securities Act, 15 U.S.C. § 77s(c), and Section 21(b) of the Exchange Act, 15 U.S.C. § 78u(b), the Formal Order designated certain individuals as officers of the Commission empowered to administer oaths and affirmations, subpoena witnesses, compel their attendance, take evidence, and require the production of any records deemed relevant or material to the investigation. *Id.*[1]

---

[1] On October 21, 2015, the Commission issued a Supplemental Order in this matter that designated additional officers of the Commission. Newville Decl. ¶5.

3

Under the Formal Order, the staff of the Commission is investigating, among other things, whether certain entities have engaged in transactions involving pre-IPO companies that could be considered "swaps," or agreements whose value is based upon the occurrence of an event relating to or based on the value of securities of those companies. *Id.* ¶6. These transactions may implicate the security-based swap provisions added to the federal securities laws under the Dodd-Frank Wall Street Reform and Consumer Protection Act of 2010 ("Dodd-Frank Act"). 15 U.S.C. § 78c(a)(68) (Exchange Act Section 3(a)(68)).

In particular, certain persons or entities may have sold or offered security-based swaps to persons who are not eligible contract participants either: (1) without a registration statement in effect, in possible violation of Section 5(e) of the Securities Act, 15 U.S.C. § 77e(e); or (2) not on a national securities exchange, in possible violation of Section 6(l) of the Exchange Act, 15 U.S.C. § 78f(l). In addition, persons or entities may have sold or offered shares in pre-IPO companies or security-based swaps without being registered with the Commission as a broker or dealer or without being associated with an entity registered with the Commission as a broker-dealer, in possible violation of Section 15(a) of the Exchange Act, 15 U.S.C. § 78o(a). Newville Decl. ¶6.

**B.    NetCirq's Business.**

NetCirq is a Delaware LLC formed in 2000. It was registered as a broker-dealer with the Commission in 2001. Newville Decl. Ex. 1 at 3, 7. In January 2002, NetCirq filed a termination request with the Commission, and its registration was then terminated effective March 25, 2002. *Id.* Ex. 2. NetCirq is thus not registered with the Commission as would be required by law if it was engaging in the business of effecting transactions of securities for its account or the account of others. *See* 15 U.S.C. § 78o(a).

However, NetCirq's publicly available website describes its business as follows:

NETCIRQ helps shareholders, founders, VCs and angel investors of private companies obtain confidential liquidity. NETCIRQ resells private securities and portfolio interests creating a

> secondary market for private equity.  If you are a shareholder . . . of a private company or portfolio and want to obtain liquidity, there is no easy way to do this until NETCIRQ.  NETCIRQ will find buyers for your shares at the best possible valuation with the least strain on your time.  NETCIRQ is creating the private equity marketplace.

Newville Decl. Ex. 3 at 2.  NetCirq's website further states that "founders of Google, Salesforce.com, Craigslist, Facebook, Tesla Motors, Netflix, Carbonite and many others all have sold some of their stock when their companies were still private.  Several of the aforementioned companies have closed their transactions through NETCIRQ."  *Id*. at 3.

According to NetCirq's website and her LinkedIn page, Kristen McRedmond Wade (formerly known as Kristen McRedmond) is the Founder and CEO of NetCirq.  Newville Decl. Ex. 3 at 6, Ex. 4 at 1.  Ms. Wade's LinkedIn page states that she previously worked at Lehman Brothers and Goldman Sachs (*id*. Ex. 4 at 1), and she was previously registered with FINRA as an employee of Lehman Brothers, Uvest Financial Services Group, and as President of NetCirq.  *Id*. Ex. 5.  Public record database searches show that Ms. Wade has recently used the address that NetCirq website lists as its business address.  Newville Decl. ¶27.

C.     **The Commission's Subpoena to NetCirq.**

On April 7, 2015, Commission staff sent a letter to NetCirq (the April 7 preservation request) by overnight mail and email (to Ms. Wade's email address) notifying Ms. Wade that NetCirq should preserve and retain certain categories of documents relating to NetCirq's business that were potentially relevant to the Commission's investigation.  Newville Decl. Ex. 6.  On April 15, 2015, a member of the staff of the Commission spoke to Ms. Wade by phone.  Newville Decl. ¶13.  Ms. Wade confirmed that she had received the April 7 preservation request and told the staff member that she was preserving everything related to NetCirq.  Ms. Wade told the staff member that NetCirq had offered to resell shares of private companies but had not closed many deals.  *Id*.

On May 6, 2015, an attorney named John Corrigan sent an email to Commission staff stating that he was Kristen Wade's attorney (and her uncle), and was emailing regarding the April 7

preservation request.  Newville Decl. Ex. 7.  Mr. Corrigan wrote that Ms. Wade intended to cooperate, and assured the staff that she "has not touched any of her records" and understood that they needed to be preserved.  *Id.*  That same day, Commission staff issued a subpoena to NetCirq (the Subpoena) that was sent by email and UPS delivery to Mr. Corrigan.  Newville Decl. Exs. 8, 9.  Commission staff received proof of service from UPS indicating that the delivery was received on May 8, 2015.  *Id.* Ex. 10.  The Subpoena required NetCirq to produce certain categories of documents by May 20, 2015, which may be summarized as:

1. Documents describing the roles and responsibilities of Ms. Wade and other employees of NetCirq.

2. Documents relating to potential or consummated transactions involving securities of unregistered issuers and NetCirq.

3. Documents relating to investors in NetCirq transactions.

4. Documents relating to NetCirq's activities described on its website:  creating a "private equity marketplace," "help[ing] shareholders get liquidity by reselling your stock" or "invest[ing] in restricted secondary interests in common/preferred stock."

5. Documents relating to any potential or consummated direct investments in securities by NetCirq.

6. Documents relating to activities listed on Ms. Wade's LinkedIn profile:  "creating a secondary market for private equity and venture capital," "reselling private securities and portfolio interests to create a secondary market for private equity" or "find[ing] buyers for your shares at the best possible valuation."

7. Documents relating to potential or consummated transactions involving NetCirq and its purported patent relating to creating a secondary market for private equity.

8. Documents relating to the registration of NetCirq as a broker-dealer.

*See* Newville Decl. Ex. 9 at 6-7 (Subpoena listing specific categories of documents requested).

On May 15, 2015, Commission staff spoke to Mr. Corrigan by phone.  Newville Decl. ¶18. He acknowledged receipt of the Subpoena and stated that NetCirq had completed three deals in the past three to four years and was currently working on a transaction with owners of a company that were seeking liquidity.  *Id.*  Mr. Corrigan stated that an IT firm had created an image of Ms. Wade's

1  computer to preserve relevant documents and that NetCirq would produce documents to the

2  Commission by Friday, May 22, 2015. *Id.*

3      **D.**    <u>**NetCirq's Failure to Comply With the Commission's Subpoena.**</u>

4         May 22, 2015 came and went, without any document production by NetCirq. Instead, on that

5
6  date, Mr. Corrigan sent an email to Commission staff stating that he no longer represented Ms. Wade

7  on this matter, and that she was "in the midst of engaging local counsel in California." Newville

8  Decl. Ex. 11. On June 8, 2015, Commission staff tried to reach Ms. Wade by phone, but the phone

9  number for NetCirq was no longer receiving messages. Newville Decl. ¶20. Also on June 8, 2015,

10  Commission staff emailed Ms. Wade, notifying her that NetCirq had missed the document production

11  deadline and asking her or her counsel to contact the staff immediately. Newville Decl. Ex. 12 at 2.

12
13         On June 24 and July 22, 2015, Commission staff again emailed Ms. Wade requesting a

14  response to the outstanding Subpoena. *Id.* at 1. On July 22, 2015, Commission staff sent a letter to

15  Ms. Wade and NetCirq via UPS (signature required), which was signed for and delivered at

16  NetCirq's address. *Id.* Ex. 13 at 43-44. The letter enclosed the Subpoena and prior correspondence,

17  and informed Ms. Wade that because NetCirq had not responded, the Commission was considering

18  compelling production of documents responsive to the subpoena. *Id.* Ex. 13.

19         On October 23, 2015, Commission staff attempted to call Ms. Wade at the NetCirq phone

20  number, which played a recorded message stating it was not a working number. Newville Decl. ¶23.

21
22  Commission staff then called John Corrigan, Ms. Wade's prior attorney, and left him a voicemail

23  informing him that the staff intended to seek a court order to enforce the outstanding subpoena

24  against NetCirq if NetCirq continued to fail to comply with the subpoena. *Id.* Mr. Corrigan did not

25  respond. Also on October 23, 2015, Commission staff sent another letter to Ms. Wade and NetCirq

26  via email and UPS (signature required). Newville Decl. Ex. 14. This letter informed Ms. Wade that

27  the staff of the Commission intended to seek enforcement of the Subpoena in federal court and

28

1    compel NetCirq's production of documents. *Id.* Ex. 14 at 2. The hard copy of the letter was signed

2    for and delivered at NetCirq's business address on October 26, 2015. *Id.* Ex. 15.

3        On October 27, 2015, Commission staff called Ms. Wade on her cell phone. Ms. Wade

4    confirmed that she was Kristen Wade, thanked the staff member for calling, and said she was in

5
     Brazil. Newville Decl. ¶25. She said she would be returning to the United States on Monday,
6
7    November 2. The Commission staff told Ms. Wade that because NetCirq had not responded to the

8    Subpoena, the Commission intended to file an action to enforce the Subpoena. Ms. Wade said "sorry

9    I can't understand you" when she was asked about the Subpoena. She confirmed that she would call

10   the staff member on Monday, November 2 when she returned to the United States. *Id.* Commission

11   staff then sent a follow-up email to Ms. Wade, confirming her commitment to call the Commission
12
13   staff on November 2. *Id.* Ex. 16.

14       In the evening on October 27, 2015, someone at the NetCirq address apparently instructed

15   UPS to return the Commission's October 23 letter (which had already been delivered and signed for

16   on October 26). The reason noted on the return was "receiver did not want, refused delivery."

17   Newville Decl. Exs. 17, 18.

18       On November 2, 2015, Commission staff called Ms. Wade on her cell phone. She did not

19   answer, but her recorded voicemail message said "Hi, this is Kristen Wade of NetCirq." Newville
20
21   Decl. ¶28. Commission staff left a voicemail informing Ms. Wade that NetCirq still had not

22   complied with the outstanding Subpoena, the Commission intended to seek enforcement of the

23   Subpoena in federal court, and she should contact Commission staff immediately. *Id.* Ms. Wade did

24   not respond.

25       On November 18, 2015, a public records database search indicated a new address for Ms.

26   Wade, as of November 17, 2015. *Id.* ¶29. Commission staff then sent an additional follow-up letter

27   addressed to Ms. Wade and NetCirq at that address, informing her that the Commission intended to

28

1   seek enforcement of the Subpoena against NetCirq and asking her to contact the staff immediately.

2   *Id.* Ex. 19.[2]  Ms. Wade never responded and has altogether failed to contact Commission staff.  As of

3   November 25, 2015, NetCirq's website (www.netcirq.com) is still active, though it is unclear whether

4   NetCirq has been able to close additional securities transaction beyond those that Ms. Wade and Mr.

5   Corrigan previously disclosed to the staff.  Newville Decl. ¶13, 18.  Although the Subpoena required

6   
7   production in May 2015, after five months, NetCirq has not produced any documents in response.

8   ### III.   ARGUMENT

9   **A.   The Commission's Subpoena Should Be Enforced.**

10   Section 22(b) of the Securities Act, 15 U.S.C. § 77v(b), and Section 21(c) of the Exchange

11   Act, 15 U.S.C §78u(c), authorize the Commission to apply for an order from this Court compelling

12   NetCirq to comply with the Subpoena.[3]  The Commission's application for enforcement is a

13   streamlined proceeding in district court, not subject to the standard rules of civil procedure.  *See SEC*

14   
15   *v. McCarthy*, 322 F.3d 650, 654-59 (9th Cir. 2003) (holding that an "application" under the securities

16   laws by the Commission to enforce its orders was not an "action" under the Federal Rules of Civil

17   Procedure, and explaining that the Exchange Act authorizes summary proceedings to enforce

18   Commission subpoenas); *SEC v. Sprecher*, 594 F.2d 317, 320 (2d Cir. 1979) (holding that Section

19   22(b) of the Securities Act authorizes the Commission to seek enforcement of its administrative

20   subpoenas by summary proceedings in district court).  Administrative subpoenas are enforceable if

21   
22   the information sought is "within the authority of the agency, the demand is not too indefinite and the

23   _____

24   [2]  The delivery address used for this letter is redacted from Newville Decl. Ex. 19 as it may be Ms. Wade's home address.

25   [3]  Under Exchange Act Section 21(c), venue in this matter properly lies in the Northern District of
26   California because NetCirq's place of business is in San Francisco, in the Northern District (Newville Decl. Exs. 1, 3), and because the investigation is being conducted by the Commission's San
27   Francisco Regional Office.  15 U.S.C. § 78u(c) (venue is proper where the subpoenaed person resides or does business or where the investigation or proceeding is carried on).

28

9

information sought is reasonably relevant." *United States v. Morton Salt Co.*, 338 U.S. 632, 652 (1950). "The scope of the judicial inquiry in an . . . agency subpoena enforcement proceeding is quite narrow." *EEOC v. Federal Express Corp.*, 558 F.3d 842, 848 (9th Cir. 2009) (quoting *EEOC v. Children's Hosp. Med. Ctr. of N. Cal.*, 719 F.2d 1426, 1428 (9th Cir. 1983) (*en banc*)). Courts in the Ninth Circuit consider: (1) whether Congress has granted the authority to investigate; (2) whether procedural requirements have been followed; and (3) whether the evidence is relevant and material to the investigation. *Id.* The showing required to meet the third prong of this test is minimal. A court "must enforce administrative subpoenas unless the evidence sought by the subpoena [is] plainly incompetent or irrelevant to any lawful purpose of the agency." *Id.* (internal quotations omitted); *see also SEC v. Obioha*, No. 12-mc-801809, 2012 WL 4889286, *12 (N.D. Cal. Oct. 12, 2012) (same) (quoting *Federal Express Corp.* 558 F.3d at 848). Because the Commission meets these criteria in this case, the Court should order compliance with the Subpoena.

           1.        **The Commission is authorized to conduct this investigation.**

      The Commission's investigation is being conducted for a legitimate purpose pursuant to its authority to investigate whether any persons or entities have violated provisions of the federal securities laws or rules and regulations promulgated thereunder. The Commission is the Congressionally-created agency charged with civil enforcement of the federal securities laws. The Commission issued the Formal Order pursuant to Section 20(a) of the Securities Act, 15 U.S.C. § 77t(a), and Section 21(a) of the Exchange Act, 15 U.S.C. § 78 u(a), and designated officers authorized to issue subpoenas pursuant to Section 19(c) of the Securities Act, 15 U.S.C. § 77s(c), and Section 21(b) of the Exchange Act, 15 U.S.C. § 78u(b). Pursuant to this grant of authority, the staff of the Commission is investigating whether various entities and individuals engaged in acts in violation of the federal securities laws in connection with transactions involving shares of private, pre-IPO companies. Thus, the investigation is being conducted for a legitimate purpose within the

1  Commission's authority. *See SEC v. Jerry T. O'Brien, Inc.*, 467 U.S. 735, 741 (1984) (the

2  Commission has "broad authority to conduct investigations into possible violations of the federal

3  securities laws and to demand the production of evidence relevant to such investigations"); *SEC v.*

4  *Arthur Young & Co.*, 584 F.2d 1018, 1024 (D.C. Cir. 1978) (matters under investigation were "all

5  areas of legitimate concern to the Commission in the discharge of its statutory responsibilities").

6

7              **2.       The Commission followed all procedural requirements for issuance and**
                          **service of the Subpoena to NetCirq.**
8

9          The Subpoena complies with applicable administrative procedures.  Following the issuance of

10  the Formal Order, an officer designated by the Commission issued the Subpoena.  *See* 15 U.S.C. §

11  78u(b) (authorizing issuance of subpoenas).  The Subpoena was served via UPS overnight delivery

12  and email to the attorney representing Ms. Wade, the founder and CEO of NetCirq.  Newville Decl.

13  Exs. 8, 9.[4]  Administrative subpoenas may be served on a party by express delivery service under the

14  Commission's Rules of Practice, 17 C.F.R. §§ 203.8, 201.232(c), and 201.150(c) and (d).

15  Furthermore, Ms. Wade's attorney at the time acknowledged receiving the Subpoena and informed

16  Commission staff that NetCirq had preserved and intended to produce responsive documents.

17  Newville Decl. ¶18.

18

19              **3.       The Subpoena to NetCirq seeks relevant and material information.**

20          The information that the Commission is seeking from NetCirq is relevant to its investigation.

21  To satisfy this requirement, a government agency seeking enforcement of an administrative subpoena

22  need only show that the information sought is "not plainly incompetent or irrelevant to any lawful

23  purpose."  *Children's Hospital Medical Center*, 719 F.2d at 1428 (quoting *Endicott Johnson Corp. v.*

24  *Perkins*, 317 U.S. 501, 509 (1943)); *see also Casey v. Fed. Trade. Comm'n*, 578 F.2d 793, 799 (9th

25

26  _____

27  [4]  After the initial service, Commission staff sent follow-up letters and emails to Ms. Wade that also
     enclosed copies of the Subpoena.  Newville Decl. Exs. 12, 13, 14, 19.
28

Cir. 1978) (same). "[T]he test is relevance to the specific purpose, and the purpose is determined by the investigators." *Arthur Young*, 584 F.2d at 1031 (D.C. Cir. 1978) (ordering compliance with SEC subpoena).

Here, the Commission is investigating whether certain entities may have violated the federal securities laws in connection with secondary market trading of shares or security-based swaps of pre-IPO companies. Certain entities, such as NetCirq, may have engaged in transactions involving pre-IPO company shares that constitute security-based swaps as defined under the federal securities laws. These entities may have sold or offered security-based swaps to persons who are not eligible contract participants[5] either: (1) without a registration statement in effect, in possible violation of Section 5(e) of the Securities Act; or (2) not on a national securities exchange, in possible violation of Section 6(l) of the Exchange Act. Furthermore, certain entities, such as NetCirq, may have engaged in secondary market trading of pre-IPO shares or security-based swaps in violation of the registration requirements of Section 15(a) of the Exchange Act.

According to its website, NetCirq is engaged in transactions involving shares of private, pre-IPO companies, and potentially security-based swaps. It purports to be a "private equity marketplace" that "resells private securities and portfolio interests creating a secondary market for private equity" and "helps shareholders get liquidity by reselling [their] stock." Newville Decl. Ex. 3 at 2, 4. NetCirq purports to have conducted a number of transactions of securities involving pre-IPO companies. However, NetCirq is not registered with the Commission as would be required by law if

---

[5] The regulatory regime established by the Dodd-Frank Act contains a number of provisions applicable to transactions in security-based swaps that involve persons who are not eligible contract participants. The full definition of "eligible contract participant" contains different monetary thresholds that vary depending on the particular type of person or entity involved. For example, individuals need at least $5 million and often $10 million invested on a discretionary basis to qualify as eligible contract participants. *See* 7 U.S.C. § 1a(18) (definition).

12

1 | it was engaging in the business of effecting transactions of securities for its account or the account of
2 | others.
3 |      NetCirq's founder and CEO, Ms. Wade, and her prior counsel have both confirmed that
4 | NetCirq retained documents that are responsive to the Subpoena.  The Subpoena to NetCirq requests
5 | categories of documents relating to NetCirq that are squarely within the scope of the Commission's
6 | investigation.  Thus, the Subpoena seeks information that is relevant to the Commission's statutory
7 | duties.  Moreover, the Commission does not already possess this information from NetCirq, and
8 |
9 | because NetCirq has not identified the investors or shareholders with which it purportedly engaged in
10 | private transactions, the Commission does not have any other reasonable way of obtaining these
11 | documents.

IV.   **CONCLUSION**

     For the foregoing reasons, the Commission respectfully requests that the Court issue an order
compelling NetCirq to comply with the Commission's administrative Subpoena and to certify its
compliance accordingly.  A Proposed Order granting such relief is filed concurrently with this
Application.

Dated:  November 25, 2015

_____
JOSHUA M. NEWVILLE
Attorney for Applicant
Securities and Exchange Commission

13