UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

-----------------------------------------------------------------x

SECURITIES AND EXCHANGE COMMISSION,                :

                      Applicant,      **CV 15   80 289MISC**

                               :          **F I L E D**

     v.                                                        :

                               :          NOV 25 2015

NETCIRQ, LLC,                                              :

                               :          SUSAN Y. SOONG
                   Respondent.              :     CLERK, U.S. DISTRICT COURT
                                       NORTHERN DISTRICT OF CALIFORNIA

-----------------------------------------------------------------x

### DECLARATION OF JOSHUA M. NEWVILLE IN SUPPORT OF SECURITIES AND EXCHANGE COMMISSION'S APPLICATION FOR AN ORDER COMPELLING COMPLIANCE WITH AN ADMINISTRATIVE SUBPOENA

      I, Joshua M. Newville, pursuant to 28 U.S.C. § 1746, do hereby declare as follows:

      1.     I am employed as an attorney in the Enforcement Division in the San Francisco

Regional Office of the Applicant Securities and Exchange Commission ("Commission"). I am

an active member of the bar of the State of New York.

      2.     I submit this Declaration in support of the Commission's Application for an Order

Compelling Compliance with an Administrative Subpoena. Specifically, the Commission's

application seeks an order directing respondent NetCirq, LLC ("NetCirq") to comply with an

investigative subpoena served upon it in connection with a nonpublic investigation conducted by

the staff of the Commission.

      3.     I make this Declaration based upon personal knowledge and my review of the

Commission's files for this investigation.

      4.     On May 4, 2015, the Commission issued a nonpublic Order Directing Private

Investigation and Designating Officers to Take Testimony (the "Formal Order") in this matter, *In the Matter of Secondary Market Trading in Pre-IPO Companies*. (Because the Commission's investigation is nonpublic and ongoing, I am not attaching a copy of the Formal Order as an exhibit. The Commission staff will make a copy of the Formal Order available to NetCirq upon written request, and stands ready to provide a copy of the Formal Order to the Court, but respectfully requests an *in camera* review). Among other things, the Formal Order:

    a.   directed, pursuant to Section 20(a) of the Securities Act of 1933 ("Securities Act"), 15 U.S.C. § 77t(a), and Section 21(a) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. § 78u(a), that the Commission staff conduct a nonpublic investigation to determine whether any persons or entities had engaged in acts or practices in violation of various of the securities laws; and

    b.   designated, pursuant to Section 19(c) of the Securities Act, 15 U.S.C. § 77s(c), and Section 21(b) of the Exchange Act, 15 U.S.C. § 78u(b), certain individuals as officers of the Commission empowered to administer oaths and affirmations, subpoena witnesses, compel their attendance, take evidence, and require the production of any records deemed relevant or material to the investigation.

5.      On October 21, 2015, the Commission issued a Supplemental Formal Order in this matter that, among other things, designated certain individuals, including me, as additional officers of the Commission.

6.      Under the Formal Order, the staff of the Commission is investigating whether certain persons or entities may have sold or offered security-based swaps to persons who are not eligible contract participants either: (1) without a registration statement in effect, in possible violation of Section 5(e) of the Securities Act, 15 U.S.C. § 77e(e); or (2) not on a national

securities exchange, in possible violation of Section 6(l) of the Exchange Act, 15 U.S.C. § 78f(l). In addition, the staff is investigating whether persons or entities may have sold or offered shares in pre-IPO companies or security-based swaps without being registered with the Commission as a broker or dealer or without being associated with an entity registered with the Commission as a broker-dealer, in possible violation of Section 15(a) of the Exchange Act, 15 U.S.C. § 78o(a).

7.     A true and correct copy of the FINRA BrokerCheck Report for NetCirq, CRD #111678, is attached as **Exhibit 1** hereto.

8.     A true and correct copy of a printout of NetCirq's registration status history from FINRA's Central Registration Depository database (Web CRD) is attached as **Exhibit 2** hereto.

9.     True and correct copies of printouts from NetCirq's publicly available website, www.netcirq.com, as of November 25, 2015, are attached as **Exhibit 3** hereto.

10.     A true and correct copy of a printout of Kristen McRedmond Wade's publicly available LinkedIn profile as of October 27, 2015, is attached as **Exhibit 4** hereto.

11.     A true and correct copy of a printout of Ms. Wade's registration history from FINRA's Web CRD database is attached as **Exhibit 5** hereto.

12.     On April 7, 2015, Cameron Hoffman, an attorney who was then a member of the staff of the Commission, sent a letter to NetCirq by overnight mail to NetCirq's business address and by email to Ms. Wade's email address ("the April 7 preservation request").  A true and correct copy of this letter is attached as **Exhibit 6** hereto.

13.     On April 15, 2015, Ms. Hoffman spoke to Ms. Wade by phone.  Ms. Wade confirmed that she had received the April 7 preservation request and told Ms. Hoffman that she was preserving all documents related to NetCirq.  Ms. Wade stated that NetCirq had offered to resell shares of private companies but had not closed that many deals.

14.     On May 6, 2015, Ms. Hoffman received an email from John Corrigan, an attorney representing Kristen Wade. A true and correct copy of this email is attached as **Exhibit 7** hereto.

15.     On May 6, 2015, Commission staff issued a subpoena to NetCirq (the "Subpoena") that was sent by email and overnight delivery to Mr. Corrigan. A true and and correct copy of the Subpoena is attached as Exhibit 8 hereto.

16.     A true and correct copy of the May 6, 2015 email from Ms. Hoffman to Mr. Corrigan, attaching the Subpoena to Netcirq, is attached as **Exhibit 9** hereto.

17.     A true and correct copy of the May 8, 2015 UPS delivery notification for the Subpoena is attached as **Exhibit 10** hereto.

18.     On May 15, 2015, Ms. Hoffman spoke to Mr. Corrigan by phone. He acknowledged receipt of the Subpoena and stated that NetCirq had completed three deals in the past three to four years and was currently working on a transaction with owners of a company that were seeking liquidity. Mr. Corrigan stated that an IT firm had created an image of Ms. Wade's computer to preserve relevant documents and that NetCirq would produce documents to the Commission by Friday, May 22, 2015.

19.     A true and correct copy of the May 22, 2015 email from Mr. Corrigan to Ms. Hoffman is attached as **Exhibit 11** hereto.

20.     On June 8, 2015, Ms. Hoffman tried to reach Ms. Wade by phone (using the phone number listed on the NetCirq website), but the phone number for NetCirq was no longer receiving messages.

21.     True and correct copies of emails from Ms. Hoffman to Ms. Wade dated June 8, June 24, and July 22, 2015, are attached as **Exhibit 12** hereto.

22.     A true and correct copy of the July 22, 2015 letter from Ms. Hoffman to Ms.

4

Wade, with attachments, is attached as **Exhibit 13** hereto.

23.    On October 23, 2015, I attempted to call Ms. Wade at the NetCirq phone number, which played a recorded message stating it was not a working number. I then called John Corrigan, Ms. Wade's prior attorney, and left him a voicemail informing him that the staff intended to file an action against NetCirq to enforce the outstanding Subpoena.

24.    On October 23, 2015, I sent a letter to Ms. Wade via email and UPS, a true and correct copy of which is attached as **Exhibit 14** hereto. A true and correct copy of the October 26, 2015 UPS delivery notification for the Subpoena is attached as **Exhibit 15** hereto.

25.    On October 27, 2015, I called Ms. Wade on her cell phone. Ms. Wade confirmed that she was Kristen Wade, thanked me for calling, and said she was in Brazil. She said she would be returning to the United States on Monday, November 2, 2015. I told Ms. Wade that because NetCirq had not responded to the Subpoena, the Commission intended to file an action to enforce the Subpoena. Ms. Wade said "sorry I can't understand you" when she was asked about the Subpoena. She confirmed that she would call me on Monday, November 2 when she returned to the United States. A true and correct copy of my email to Ms. Wade on October 27, 2015, is attached as **Exhibit 16** hereto.

26.    A true and correct copy of the UPS envelope returning my October 23, 2015 letter is attached as **Exhibit 17** hereto. Tracking information from UPS shows that the letter was accepted for delivery on October 26, but that the return shipment was logged the next day, October 27, 2015, at 9:08 pm. A true and correct copy of the tracking information is attached as Exhibit 18 hereto.

27.    On October 27, 2015, I reviewed a national comprehensive report generated by Thompson Reuters CLEAR for Kristen Wade, indicating her connection to the address that

NetCirq, LLC lists as its business address on its website.

28.     On November 2, 2015, I called Ms. Wade on her cell phone.  She did not answer, but her recorded voicemail message said "Hi, this is Kristen Wade of NetCirq."  I left a voicemail informing Ms. Wade that NetCirq still had not complied with the outstanding Subpoena, that the Commission intended to file an action in federal court to enforce the Subpoena, and that she should contact Commission staff immediately.  Ms. Wade never responded.

29.     On November 18, 2015, I reviewed a national comprehensive report generated by Thompson Reuters CLEAR for Kristen Wade, indicating a new address as of November 17, 2015.  On November 18, 2015, I sent an additional follow-up letter to Ms. Wade at that new address via UPS, a true and correct copy of which is attached as **Exhibit 19** hereto (the street address has been redacted).

30.     Although the Subpeona required production in May 2015, NetCirq has not produced any documents in response to the Subpoena.


I declare under penalty of perjury that the foregoing is true and correct.


Executed:     San Francisco, California
              November 25, 2015                    _____
                                                   Joshua M. Newville

**EXHIBITS TO DECLARATION OF JOSHUA M. NEWVILLE**

1) BrokerCheck Report for NetCirq, LLC (CRD# 111678), dated 10/29/2015

2) NetCirq, LLC (CRD# 111678) Organization Registration Status History

3) NetCirq website printout, dated 11/25/2015

4) LinkedIn Profile for Kristen McRedmond as of 10/27/2015

5) Web CRD Registrations Summary for Kristen A. McRedmond

6) Letter from the Securities and Exchange Commission to NetCirq, LLC, dated 4/7/2015

7) Email from John Corrigan to Cameron Hoffman, dated 5/6/2015

8) Email from Cameron Hoffman to John Corrigan, dated 5/6/2015

9) Letter from the Securities and Exchange Commission to NetCirq, LLC, dated 5/6/2015

10) Email from United Parcel Service confirming delivery of 5/6/2015 letter from the Securities and Exchange Commission to NetCirq, LLC, dated 5/8/2015

11) Email from John Corrigan to Cameron Hoffman, dated 5/22/2015

12) Email from Cameron Hoffman to Kristen Wade (kwade@netcirq.com), dated 7/22/2015

13) Letter from the Securities and Exchange Commission to Kristen McRedmond Wade/NetCirq, LLC, dated 7/22/2015

14) Email from Joshua Newville to Kristen Wade (kwade@netcirq.com), attaching letter from the Securities and Exchange Commission, dated 10/23/2015

15) Email from United Parcel Service confirming delivery of 10/23/2015 letter from the Securities and Exchange Commission to Kristen Wade, dated 10/26/2015

16) Email from Joshua Newville to Kristen Wade (kwade@netcirq.com), dated 10/27/2015

17) United Parcel Service Express Mailer marked "RETURN TO SENDER," dated 10/27/1015

18) United Parcel Service Tracking Detail for package 1ZA375R70193409333, dated 11/4/2015

19) Letter from the Securities and Exchange Commission to Kristen McRedmond Wade/NetCirq, LLC, dated 11/18/2015

# EXHIBIT 1



**BrokerCheck Report**

# NETCIRQ, LLC

CRD# 111678

Report #88535-16408, data current as of Thursday, October 29, 2015.

| Section Title | Page(s) |
| --- | --- |
| Report Summary | 1 |
| Registration and Withdrawal | 2 |
| Firm Profile | 3 - 5 |
| Firm History | 6 |
| Firm Operations | 7 - 11 |



**About BrokerCheck®**

BrokerCheck offers information on all current, and many former, registered securities brokers, and all current and former registered securities firms. FINRA strongly encourages investors to use BrokerCheck to check the background of securities brokers and brokerage firms before deciding to conduct, or continue to conduct, business with them.

- **What is included in a BrokerCheck report?**
  BrokerCheck reports for individual brokers include information such as employment history, professional qualifications, disciplinary actions, criminal convictions, civil judgments and arbitration awards. BrokerCheck reports for brokerage firms include information on a firm's profile, history, and operations, as well as many of the same disclosure events mentioned above.
  Please note that the information contained in a BrokerCheck report may include pending actions or allegations that may be contested, unresolved or unproven. In the end, these actions or allegations may be resolved in favor of the broker or brokerage firm, or concluded through a negotiated settlement with no admission or finding of wrongdoing.
- **Where did this information come from?**
  The information contained in BrokerCheck comes from FINRA's Central Registration Depository, or CRD® and is a combination of:
    o information FINRA and/or the Securities and Exchange Commission (SEC) require brokers and brokerage firms to submit as part of the registration and licensing process, and
    o information that regulators report regarding disciplinary actions or allegations against firms or brokers.
- **How current is this information?**
  Generally, active brokerage firms and brokers are required to update their professional and disciplinary information in CRD within 30 days. Under most circumstances, information reported by brokerage firms, brokers and regulators is available in BrokerCheck the next business day.
- **What if I want to check the background of an investment adviser firm or investment adviser representative?**
  To check the background of an investment adviser firm or representative, you can search for the firm or individual in BrokerCheck. If your search is successful, click on the link provided to view the available licensing and registration information in the SEC's Investment Adviser Public Disclosure (IAPD) website at http://www.adviserinfo.sec.gov. In the alternative, you may search the IAPD website directly or contact your state securities regulator at http://www.finra.org/Investors/ToolsCalculators/BrokerCheck/P455414.
- **Are there other resources I can use to check the background of investment professionals?**
  FINRA recommends that you learn as much as possible about an investment professional before deciding to work with them. Your state securities regulator can help you research brokers and investment adviser representatives doing business in your state.

**Thank you for using FINRA BrokerCheck.**



Using this site/information means that you accept the FINRA BrokerCheck Terms and Conditions. A complete list of Terms and Conditions can be found at

brokercheck.finra.org



For additional information about the contents of this report, please refer to the User Guidance or www.finra.org/brokercheck.  It provides a glossary of terms and a list of frequently asked questions, as well as additional resources. For more information about FINRA, visit www.finra.org.

**NETCIRQ, LLC**
CRD# 111678
SEC# 8-53193

## Main Office Location

500 AIRPORT BOULEVARD
SUITE 100
BURLINGAME, CA  94010

## Mailing Address

500 AIRPORT BOULEVARD
SUITE 100
BURLINGAME, CA  94010

## Business Telephone Number

650-579-6650



# Report Summary for this Firm

This report summary provides an overview of the brokerage firm. Additional information for this firm can be found in the detailed report.

## Firm Profile

This firm is classified as a limited liability company.

This firm was formed in Delaware on 09/27/2000.

Its fiscal year ends in December.

## Firm History

Information relating to the brokerage firm's history such as other business names and successions (e.g., mergers, acquisitions) can be found in the detailed report.

## Firm Operations

This brokerage firm is no longer registered with FINRA or a national securities exchange.

## Disclosure Events

Brokerage firms are required to disclose certain criminal matters, regulatory actions, civil judicial proceedings and financial matters in which the firm or one of its control affiliates has been involved.

Are there events disclosed about this firm?    **No**

**FINra**

## Registration Withdrawal Information

This section provides information relating to the date the brokerage firm ceased doing business and the firm's financial obligations to customers or other brokerage firms.

| | |
|---|---|
| **This firm terminated or withdrew registration on:** | 01/24/2002 |
| **Does this brokerage firm owe any money or securities to any customer or brokerage firm?** | No |

www.finra.org/brokercheck



# Firm Profile

This firm is classified as a limited liability company.

This firm was formed in Delaware on 09/27/2000.

Its fiscal year ends in December.

## Firm Names and Locations

This section provides the brokerage firm's full legal name, "Doing Business As" name, business and mailing addresses, telephone number, and any alternate name by which the firm conducts business and where such name is used.

**NETCIRQ, LLC**
**Doing business as NETCIRQ, LLC**
**CRD#**   111678
**SEC#**   8-53193

### Main Office Location

500 AIRPORT BOULEVARD
SUITE 100
BURLINGAME, CA  94010

### Mailing Address

500 AIRPORT BOULEVARD
SUITE 100
BURLINGAME, CA  94010

### Business Telephone Number

650-579-6650

---

# Firm Profile

This section provides information relating to all direct owners and executive officers of the brokerage firm.

## Direct Owners and Executive Officers

| **Legal Name & CRD# (if any):** | MCREDMOND, KRISTEN AMY |
| --- | --- |
| | 2795205 |
| **Is this a domestic or foreign entity or an individual?** | Individual |
| **Position** | DESIGNATED PRINCIPAL, SOLE MEMBER |
| **Position Start Date** | 12/2000 |
| **Percentage of Ownership** | 75% or more |
| **Does this owner direct the management or policies of the firm?** | Yes |
| **Is this a public reporting company?** | No |

| **Legal Name & CRD# (if any):** | POSTREL, HELENE BERSON |
| --- | --- |
| | 2240945 |
| **Is this a domestic or foreign entity or an individual?** | Individual |
| **Position** | FINOP |
| **Position Start Date** | 08/2001 |
| **Percentage of Ownership** | Less than 5% |
| **Does this owner direct the management or policies of the firm?** | Yes |
| **Is this a public reporting company?** | No |



## Firm Profile

This section provides information relating to any indirect owners of the brokerage firm.

### Indirect Owners

No information reported.

©2015 FINRA. All rights reserved.    Report# 88535-16408 about NETCIRQ, LLC. Data current as of Thursday, October 29, 2015.

www.finra.org/brokercheck

# Firm History

This section provides information relating to any successions (e.g., mergers, acquisitions) involving the firm.

No information reported.





**Firm Operations**

## Registrations

This section provides information about the regulators (Securities and Exchange Commission (SEC), self-regulatory organizations (SROs), and U.S. states and territories) with which the brokerage firm is currently registered and licensed, the date the license became effective, and certain information about the firm's SEC registration.

**This firm is no longer registered.**

**The firm's registration was from 09/13/2001 to 03/25/2002.**

**FINra**

# Firm Operations

## Types of Business

This section provides the types of business, including non-securities business, the brokerage firm is engaged in or expects to be engaged in.

**This firm currently conducts 1 type of business.**

### Types of Business

Private placements of securities

User Guidance

FINra

9

# Firm Operations

## Clearing Arrangements

This firm does not hold or maintain funds or securities or provide clearing services for other broker-dealer(s).

## Introducing Arrangements

This firm does not refer or introduce customers to other brokers and dealers.

©2015 FINRA. All rights reserved.    Report# 88535-16408 about NETOIRQ, LLC. Data current as of Thursday, October 29, 2015.

**Firm Operations**

**Industry Arrangements**



This firm does not have books or records maintained by a third party.

This firm does not have accounts, funds, or securities maintained by a third party.

This firm does not have customer accounts, funds, or securities maintained by a third party.

**Control Persons/Financing**

This firm does not have individuals who control its management or policies through agreement.

This firm does not have individuals who wholly or partly finance the firm's business.

www.finra.org/brokercheck

User Guidance



# Firm Operations

## Organization Affiliates

This section provides information on control relationships the firm has with other firms in the securities, investment advisory, or banking business.

**This firm is not, directly or indirectly:**
- **in control of**
- **controlled by**
- **or under common control with**

**the following partnerships, corporations, or other organizations engaged in the securities or investment advisory business.**

**This firm is not directly or indirectly, controlled by the following:**
- **bank holding company**
- **national bank**
- **state member bank of the Federal Reserve System**
- **state non-member bank**
- **savings bank or association**
- **credit union**
- **or foreign bank**

FINRA

## End of Report

**This page is intentionally left blank.**

©2015 FINRA. All rights reserved.    Report# 88535-16408 about NETCIRQ, LLC. Data current as of Thursday, October 29, 2015.

# EXHIBIT 2

# Organization Registration Status History

**Organization CRD Number: 111678**

**Organization SEC Number: 8-53193**

**No IA Record**

**Organization Name: NETCIRQ, LLC**

**Applicant Name: NETCIRQ, LLC**

| SRO/SEC/Jurisdiction | Registration Status | Status Effective Date | Changed By |
|---|---|---|---|
| United States Securities and Exchange Commission | TERMINATED | 03/25/2002 | MORGANLA |
| United States Securities and Exchange Commission | PENDINGWD | 01/25/2002 | MORGANLA |
| United States Securities and Exchange Commission | TERMREQUEST | 01/24/2002 | OPM AUTOMATED PROCESSING |
| United States Securities and Exchange Commission | APPROVED | 09/13/2001 | CHARNOCKC |
| United States Securities and Exchange Commission | CONDITIONAL | 03/16/2001 | MORGANLA |
| United States Securities and Exchange Commission | PENDING | 03/14/2001 | MORGANLA |
| United States Securities and Exchange Commission | HOLDING | 03/08/2001 | |

© 2015 FINRA. All rights reserved. FINRA is a registered trademark of the Financial Industry Regulatory Authority, Inc.
Privacy | Legal | Terms & Conditions                                                      Tw    Lin

EXHIBIT 3



**NETCIRQ**
the private equity marketplace

| Home | | | About Us | | | For Sellers | | | For Buyers | | | Contact Us | |



**NETCIRQ** the private equity marketplace **raises capital and provides confidential liquidity for shareholders of private companies.**

301 Mission Street 27th Floor, San Francisco, CA. 94105 | P: 415.814.2239 | F: 415.654.5116 | Copyright 2015. NETCIRQ. All rights reserved.





## What is NETCIRQ?

NETCIRQ helps shareholders, founders, VCs and angel investors of private companies obtain confidential liquidity. NETCIRQ resells private securities and portfolio interests creating a secondary market for private equity. If you are a shareholder (typically founder, VC, or limited partner) of a private company or portfolio and want to obtain liquidity, there is no easy way to do this until NETCIRQ. NETCIRQ will find buyers for your shares at the best possible valuation with the least strain on your time. NETCIRQ is creating the private equity marketplace™.



301 Mission Street 27th Floor, San Francisco, CA. 94105 | P: 415.814.2239 | F: 415.654.5116 | Copyright 2015. NETCIRQ. All rights reserved.





## Our Approach

We are extremely discreet and respect the sensitivity of the engagement. Once engaged, we contact our buyers and market your securities, securing as many term sheets as possible with various terms. Our goal is to obtain the highest price with the best terms in the shortest time frame with the least intrusion on your time. Additionally, we are well-versed with all of the proper legal documentation necessary to complete these transactions and will work very closely with your counsel and board members to ensure total compliance. There are several steps that we have mastered which include reviewing all shareholder agreements, retaining waivers from existing shareholders, and assessing the transferability and restrictions of your shares.

### Why Sell?

Liquidity
Diversification
Capitalize on the progress of your company
No Lock-ups
No disclosure requirements to the public markets, (especially, if IPO is possible exit)
No longer with the company
Personal matters

### How Do You Qualify As a Target Client?

NETCIRQ primarily focuses on venture-backed companies that are three to thirty-six months away from a potential liquidity event. A typical transaction size ranges from $500K to $50 million. It is helpful if the founder(s) is(are) still currently in management with the company or are able to provide access to the management team for buyer due diligence.

### Who Have Done This?

The founders of Google, Salesforce.com, Craigslist, Facebook, Tesla Motors, NetFlix, Carbonite and many others all have sold some of their stock when their companies were still private. Several of the aforementioned companies have closed their transactions through NETCIRQ. Their venture backers include Benchmark, New Enterprise Associates, TCV, Accel Partners, ONSET, General Atlantic and Menlo Ventures.

### Who Buys Your Shares?

We market your transaction to institutional buyers who are able to invest in restricted secondary interests in common/preferred stock. NETCIRQ ensures the best price. There is no impact on the capitalization of your company as existing shares are simply being transferred.

301 Mission Street 27th Floor, San Francisco, CA. 94105 | P: 415.814.2239 | F: 415.654.5116 | Copyright 2015. NETCIRQ. All rights reserved.



# NETCIRQ
the private equity marketplace



| Home | About Us | For Sellers | For Buyers | Contact Us |

## Information for Sellers
### Including Founders, VCs & Angel Investors



NETCIRQ helps shareholders get liquidity by reselling your stock (typically 10-20%).

- Proceed with Total Confidentiality & Complete Anonymity - Exclusively with Signed, Executed NDAs from Every Investor

- Ensure the Best Valuation for Your Shares

- Secure Multiple Term Sheets

- Help Founders Obtain Liquidity Even During S-1 Registration

- Leverage Scores of Deep Personal Relationships

NETCIRQ also makes direct investments in founder shares.

301 Mission Street 27th Floor, San Francisco, CA. 94105 | P: 415.814.2239 | F: 415.654.5116 | Copyright 2015. NETCIRQ. All rights reserved.





## Information for Buyers

NETCIRQ is an agent for secondary directs.

We only represent **well-funded, top-tier** venture backed companies with exceptional management teams. All of our sellers have an imminent exit strategy (all within 3 to 36 months). Buyers are able to invest in restricted secondary interests in common/preferred stock.



301 Mission Street 27th Floor, San Francisco, CA. 94105 | P: 415.814.2239 | F: 415.654.5116 | Copyright 2015. NETCIRQ. All rights reserved.



**the private equity marketplace**

| Home | About Us | For Sellers | For Buyers | Contact Us |

## The Team



### Kristen McRedmond Wade - Founder & CEO

Kristen spent nearly a decade on Wall Street, most of her time at Lehman Brothers and Goldman, Sachs & Co. Kristen worked closely with all areas of the investment bank during her Wall Street tenure, including private equity, investment banking, equity capital markets, private client services, and asset management. At Lehman, she serviced the venture capital community and entrepreneurs of private technology, telecommunications, and health care companies with their investment banking and capital needs. Frequently, entrepreneurs asked for her assistance in selling some shares of their companies while they were still private, something that was nearly impossible. This is how the idea of NETCIRQ was generated. Kristen left Wall Street to join the senior management (EVP of Corporate Development and EVP of Business development) team of an e-commerce consulting firm, Etensity (now DDLabs), then founded NETCIRQ in 2000. She received her B.S. and B.A from Xavier University, and her M.S. in Finance from Boston College.

Kristen is on the board of Junior Achievement and in her free time enjoys fine dining, wine, traveling, hiking and watching baseball and college football.

### Ahmed Abu Deiab - Associate

Ahmed joined NETCIRQ from Financial West where he was a research analyst focusing on both private and public companies. He is also an entrepreneur, CEO and Founder, of Ocean Limousine, running all aspects of the business. He graduated from San Francisco State with a B.S in Business Administration and is currently pursuing his Masters in Finance at Golden Gate University. He is fluent in both English and Arabic and resides in San Francisco with his lovely wife.

### Dave Parikh - Analyst Intern

Dave is currently a student at UC Berkeley where he is pursuing a degree in Business Administration and Economics. A native of the Bay Area, he grew up as a sports fanatic and played six different sports over the years. He is currently the Vice-Captain of his professional dance team at UC Berkeley and a project manager of Venture Strategy Solutions, a student-run consulting organization. When he is not busy studying or engaged in extracurricular activities, Dave enjoys spending time with his friends and family.

### Shirley Hu - Marketing Intern

Shirley joined NETCIRQ from China International Capital Corporation where she was an investment banking intern researching, analyzing and supporting clients of both private and public corporations. She also interned at Pure LeapFrog and Zoomlion. She is the co-founder of Orator@Berkeley and Secretary General of the Love Scholarship. She is pursuing her BA double majoring in Economics and Sociology from University of California, Berkeley. She is fluent in English, Mandarin, and basic French.

## Advisory Board

- Frank Bonsal Jr. - Founder of NEA (New Enterprise Associates)
- Andrew Hart - Former Senior Managing Director, Bear Stearns

Team

- Chris Kitze - Founder of Xoom.com, NBCi, Former CEO of wine.com

301 Mission Street 27th Floor, San Francisco, CA. 94105 | P: 415.814.2239 | F: 415.654.5116 | Copyright 2015. NETCIRQ. All rights reserved.





## Contact Us

**Kristen McRedmond Wade**
**Founder and CEO**
p: 415-814-2239
f: 415-654-5116
e: kwade@netcirq.com

**Associates:**

**James Nelson**
e: jnelson@netcirq.com

**Christopher Chan**
e: cchan@netcirq.com

**NETCIRQ**

301 Mission Street Millennium Tower,
27th Floor,
San Francisco, CA  94105

301 Mission Street 27th Floor, San Francisco, CA. 94105 | P: 415.814.2239 | F: 415.654.5116 | Copyright 2015. NETCIRQ. All rights reserved.

EXHIBIT 4

Kristen McRedmond | LinkedIn

What is LinkedIn?   Join Today   Sign In

# Kristen McRedmond

CEO & Founder at NETCIRQ

San Francisco Bay Area | Internet

| | |
|---|---|
| Previous | Etensity, Lehman Brothers, Goldman Sachs |
| Education | Boston College |

**25**
connections

## Join LinkedIn and access Kristen's full profile. It's free!

As a LinkedIn member, you'll join 300 million other professionals who are sharing connections, ideas, and opportunities.

- See who you know in common
- Get introduced
- Contact **Kristen** directly

**View Kristen's Full Profile**

---

### Find a different Kristen McRedmond

| First Name | Last Name | 🔍 |
|---|---|---|

**Example:** Kristen McRedmond

Kristen McRedmond
--
United States

Kristen McRedmond
--
United States

More professionals named Kristen McRedmond

### People Also Viewed


**Christopher Chan**
Investment Banking Analyst at Arbor Advisors


**Dave Parikh**
Investment Banking Summer Analyst at Momentum Partners


**James Carr-Nelson**
Co-Founder/Chief of Joint Operations at WoodStalk


**Ahmed Abu deiab**
To gain employment as an Investment Associate


**Beth Seidenberg**


**Richard Budhitresno**
Student at University of California, Berkeley


**Reinaldo Tendean**
Student at University of California, Berkeley


**Martha Vorlicek**
Managing Director, Chief Operating Officer at HarbourVest Partners, LLC


**Lorra Stone**
CFO at IDG Ventures SF


**Jeffrey Sheibels, CRTRP**
Bookkeeper and CTEC Registered Tax Return Preparer

---

## Experience

### CEO & Founder
NETCIRQ
2000 – Present (15 years)

### EVP of Corporate & Business Development
Etensity
1999 – 2000 (1 year)

### Associate
Lehman Brothers
August 1996 – November 1999 (3 years 4 months) | New York



### Analyst
Goldman Sachs
December 1992 – 1995 (3 years) | New York



---

## Education

### Boston College
M.S. in Finance
1991 – 1992

Activities and Societies: Founded the first Xavier Alumni chapter in Boston.



**Xavier University**

BS, BA, Finance and Marketing

**Find your next opportunity**

Update your profile

## View Kristen's full profile to...

- See who you know in common
- Get introduced
- Contact **Kristen** directly

View Kristen's Full Profile

Not the Kristen McRedmond you're looking for? View more

LinkedIn member directory:  a  b  c  d  e  f  g  h  i  j  k  l  m  n  o  p  q  r  s  t  u  v  w  x  y  z  more  |  Browse members by country

© 2015  |  User Agreement  |  Privacy Policy  |  Community Guidelines  |  Cookie Policy  |  Copyright Policy  |  Guest Controls

# EXHIBIT 5

# Registrations Summary

**Individual CRD#: 2795205**          **Individual Name: MCREDMOND, KRISTEN A**

**Current Firm(s):**

## Registrations Summary With Current Employers

⚠No Current Employers Found.

**Prior Firm(s):**

## Registrations Summary With Prior Employers

| Firm Name | Firm CRD | Start Date | End Date | IARD Regs. | CRD Regs. | SFG Member | Disciplined Firm |
|-----------|----------|------------|----------|------------|-----------|------------|------------------|
| UVEST FINANCIAL SERVICES GROUP, INC. | 13787 | 06/2000 | 11/2004 | N | N | N | N |
| NETCIRQ, LLC | 111678 | 12/2000 | 01/2002 | N | N | N | N |
| LEHMAN BROTHERS INC. | 7506 | 08/1996 | 11/1999 | N | N | N | N |

Back to Top

## Registrations with Prior Employers

**Firm CRD # : 13787**          **Firm Name : UVEST FINANCIAL SERVICES GROUP, INC.**

| Employment Start Date | 06/05/2000 |
|-----------------------|------------|
| Employment End Date | 11/16/2004 |
| Reason for Termination | Voluntary |
| Termination Comment | |
| Firm Name at Termination | UVEST FINANCIAL SERVICES GROUP, INC. |

| Regulatory Authority | Registration Category | Filing Date | Status Date | Registration Status | Approval Date |
|----------------------|-----------------------|-------------|-------------|---------------------|---------------|
| FINRA | GS | 06/05/2000 | 11/16/2004 | TERMED | 06/05/2000 |
| VA | AG | 06/05/2000 | 11/25/2002 | TERMED | 06/06/2000 |

| Regulatory Authority | Registration Category | Filing Date | Status Date | Registration Status | Approval Date |
|----------------------|-----------------------|-------------|-------------|---------------------|---------------|
| CA | AG | 06/05/2000 | 11/16/2004 | TERMED | 06/05/2000 |
| CT | AG | 09/29/2000 | 11/25/2002 | TERMED | 09/29/2000 |
| DC | AG | 06/05/2000 | 11/25/2002 | TERMED | 06/05/2000 |
| DE | AG | 09/29/2000 | 11/25/2002 | TERMED | 09/29/2000 |
| FL | AG | 09/29/2000 | 11/25/2002 | TERMED | 10/02/2000 |
| MA | AG | 06/05/2000 | 11/25/2002 | TERMED | 06/05/2000 |
| MD | AG | 06/05/2000 | 11/25/2002 | TERMED | 06/05/2000 |

| NC | AG | 09/29/2000 | 11/25/2002 | TERMED | 09/29/2000 |
| NJ | AG | 09/29/2000 | 11/25/2002 | TERMED | 09/29/2000 |
| NY | AG | 06/05/2000 | 11/16/2004 | TERMED | 06/05/2000 |
| OH | AG | 09/29/2000 | 11/25/2002 | TERMED | 10/02/2000 |
| PA | AG | 09/29/2000 | 11/25/2002 | TERMED | 09/29/2000 |

Back to Top

## Registrations with Prior Employers

**Firm CRD # : 111678**                    **Firm Name : NETCIRQ, LLC**

| | |
|---|---|
| **Employment Start Date** | 12/20/2000 |
| **Employment End Date** | 01/24/2002 |
| **Reason for Termination** | Voluntary |
| **Termination Comment** | WITHDRAWL OF BROKER DEALER REGISTRATION |
| **Firm Name at Termination** | NETCIRQ, LLC |

| Regulatory Authority | Registration Category | Filing Date | Status Date | Registration Status | Approval Date |
|---|---|---|---|---|---|
| FINRA | FI | 03/08/2001 | 05/02/2001 | T_NOREG | |
| FINRA | FN | 05/02/2001 | 01/24/2002 | T_NOREG | |
| FINRA | GP | 03/08/2001 | 01/24/2002 | TERMED | 09/13/2001 |
| FINRA | GS | 03/08/2001 | 01/24/2002 | TERMED | 09/13/2001 |

| Regulatory Authority | Registration Category | Filing Date | Status Date | Registration Status | Approval Date |
|---|---|---|---|---|---|
| CA | AG | 03/08/2001 | 01/24/2002 | TERMED | 10/30/2001 |
| IL | AG | 03/08/2001 | 01/24/2002 | TERMED | 10/31/2001 |
| MA | AG | 03/08/2001 | 01/24/2002 | T_NOREG | |
| MD | AG | 03/08/2001 | 01/24/2002 | TERMED | 09/14/2001 |
| NY | AG | 03/08/2001 | 01/24/2002 | TERMED | 10/31/2001 |
| PA | AG | 03/08/2001 | 01/24/2002 | T_NOREG | |
| TX | AG | 03/08/2001 | 01/24/2002 | TERMED | 09/18/2001 |

Back to Top

## Registrations with Prior Employers

**Firm CRD # : 7506**                    **Firm Name : LEHMAN BROTHERS INC.**

| | |
|---|---|
| **Employment Start Date** | 08/04/1996 |
| **Employment End Date** | 11/19/1999 |
| **Reason for Termination** | Voluntary |
| **Termination Comment** | |
| **Firm Name at Termination** | LEHMAN BROTHERS INC. |

| Regulatory Authority | | Filing Date | Status Date | Registration Status | Approval Date |
|---|---|---|---|---|---|

|  | Registration Category |  |  |  |  |
|---|---|---|---|---|---|
| FINRA | GS | 07/05/1999 | 12/16/1999 | TERMED | 10/17/1996 |
| VA | AG | 07/05/1999 | 12/16/1999 | TERMED | 03/20/1997 |

| Regulatory Authority | Registration Category | Filing Date | Status Date | Registration Status | Approval Date |
|---|---|---|---|---|---|
| ARCA | GS | 07/05/1999 | 12/16/1999 | TERMED | 10/17/1996 |
| CBOE | GS | 07/05/1999 | 12/16/1999 | TERMED | 10/17/1996 |
| NYSE | GS | 07/05/1999 | 12/16/1999 | TERMED | 12/02/1996 |
| NYSE-MKT | GS | 07/05/1999 | 12/16/1999 | TERMED | 12/02/1996 |
| PHLX | GS | 07/05/1999 | 12/16/1999 | TERMED | 10/17/1996 |
| AZ | AG | 07/05/1999 | 12/16/1999 | TERMED | 02/04/1999 |
| CA | AG | 07/05/1999 | 12/16/1999 | TERMED | 03/20/1997 |
| CO | AG | 07/05/1999 | 12/31/1998 | TERMED | 03/20/1997 |
| CT | AG | 07/05/1999 | 12/16/1999 | TERMED | 02/04/1999 |
| DC | AG | 07/05/1999 | 12/16/1999 | TERMED | 03/24/1997 |
| FL | AG | 07/05/1999 | 12/16/1999 | TERMED | 03/26/1997 |
| GA | AG | 07/05/1999 | 12/16/1999 | TERMED | 12/10/1997 |
| KY | AG | 07/05/1999 | 12/31/1998 | TERMED | 07/16/1997 |
| MA | AG | 07/05/1999 | 12/16/1999 | TERMED | 07/14/1997 |
| MD | AG | 07/05/1999 | 12/16/1999 | TERMED | 07/10/1997 |
| MI | AG | 07/05/1999 | 12/31/1998 | TERMED | 03/24/1997 |
| NC | AG | 07/05/1999 | 12/31/1998 | TERMED | 03/20/1997 |
| NJ | AG | 07/05/1999 | 12/16/1999 | TERMED | 03/21/1997 |
| NV | AG | 07/05/1999 | 12/16/1999 | TERMED | 12/10/1998 |
| NY | AG | 07/05/1999 | 12/16/1999 | TERMED | 10/21/1996 |
| OH | AG | 07/05/1999 | 12/16/1999 | TERMED | 03/21/1997 |
| PA | AG | 07/05/1999 | 12/16/1999 | TERMED | 03/20/1997 |
| RI | AG | 07/05/1999 | 12/16/1999 | TERMED | 03/21/1997 |
| TX | AG | 07/05/1999 | 12/16/1999 | TERMED | 05/28/1999 |
| UT | AG | 07/05/1999 | 12/16/1999 | TERMED | 12/09/1998 |

Back to Top

© 2015 FINRA. All rights reserved. FINRA is a registered trademark of the Financial Industry Regulatory Authority, Inc.
Privacy | Legal | Terms & Conditions                                                                     Tw   Lin

# EXHIBIT 6



**UNITED STATES**
**SECURITIES AND EXCHANGE COMMISSION**
**SAN FRANCISCO REGIONAL OFFICE**
44 MONTGOMERY STREET
SUITE 2800
SAN FRANCISCO, CALIFORNIA 94104

DIRECT DIAL: 415-705-2455
EMAIL: HOFFMANC@SEC.GOV

April 7, 2015

**Via Overnight Delivery &**
**Email to: kwade@netcirq.com**

NetCirq, LLC
c/o Kristin McRedmond Wade
301 Mission Street, 27th Floor
San Francisco, CA 94105

Re:   In the Matter of Secondary Market Trading by Pre-IPO
      Shareholders, File No. MSF-03983

Dear Ms. Wade:

**We believe you and/or NetCirq, LLC, may possess documents and data that are**
**relevant to an ongoing investigation being conducted by the staff of the United States**
**Securities and Exchange Commission. Accordingly, we hereby provide notice that**
**such evidence should be reasonably preserved and retained until further notice.**
**Failure to do so could give rise to civil and criminal liability.**

The Commission considers potentially relevant documents to include those created on
or after January 1, 2013 that relates or refers to the following transactions/topics:

(1)   Any transaction relating to any security or any interest, in whatever
      form, of any security of an unregistered issuer;

(2)   Any transaction relating to any fund or other investment vehicle
      intended to acquire any security or any interest, in whatever form,
      or any security of any unregistered issuer;

(3)   Any transaction related to the following activities listed on your
      company website: create a "private equity marketplace," "help
      shareholder get liquidity by reselling your stock" or "invest in
      restricted secondary interests in common/preferred stock."

(4)   Any transaction related to the following activities listed on your
      company LinkedIn profile: "creating a secondary market for private
      equity and venture capital," "reselling private securities and
      portfolio interests to create a secondary market for private equity"
      or "find[ing] buyers for your shares at the best possible valuation."

(4)   Any patent(s) or applications for a "System and Method for
      Business to Investor Exchange for Raising Capital and For Creating

NetCirq, LLC
April 7, 2015
Page 2

           a Secondary Market for Private Equity" and any transaction(s)
           effected over any such system; and,

(4)      Any communications related to the above topics.

Such documents include both "hard copy" versions and electronically-stored information in your possession, custody or control, including text files, data compilations, word processing documents, spreadsheets, e-mail, voicemail, data bases, calendars and scheduling information, logs, file fragments and backup files, letters, instant messages, memoranda, notes, drawings, designs, correspondence or communication of any kind. Evidence that is stored electronically may be maintained on shared network files, computer hard drives, servers, DVDs, CD-ROMs, flash drives, thumb drives, laptops, digital recorders, netbooks, PDAs, smartphones, or other handheld devices.

In this letter, I refer to such documents and data as "Evidence." <u>You have a duty to reasonably preserve and retain such Evidence.</u>

<u>This duty includes an obligation to provide notice</u> to all employees or custodians who may be in possession of Evidence. This duty also extends to the preservation and retention of Evidence in the possession or custody of third-parties, such as an internet service provider or a cloud computing provider, if such Evidence is within your control.

<u>You may need to act affirmatively to prevent the destruction of Evidence</u>. This duty may necessitate quarantining certain Evidence to avoid its destruction or alteration. You should consider whether you need to discontinue the routine destruction of Evidence, including discontinuing the recycling of backup tapes or other storage media, and the deletion of emails, "trash," "recycling," "drafts," "sent," or "archived" folders. You should avoid running or installing any drive cleaning, wiping, encrypting, or defragmenting software on hard disks of computers that may contain Evidence.

<u>You should consider preserving any forensically recoverable data by having mirror image copies made of the Evidence</u>. Having said that, any attempt to replicate electronic data without adhering to best practices for data replication could compromise the integrity or contents of such data. Simply making "hard copies" of such Evidence or transforming it to other formats (such as TIFF, or PDF documents) does not constitute preservation of such Evidence. We are prepared to discuss with you proper protocols for replication before you attempt to copy Evidence. The Commission may be able to retain and supervise computer forensic resources to properly and non-invasively create back-up images of Evidence.

NetCirq, LLC
April 7, 2015
Page 3

In addition to preserving the Evidence described above, we further request that you take no action to delete or otherwise compromise any content existing on social networking websites such as "Facebook" or "LinkedIn." Moreover, we request that you take no affirmative action to delete any emails, even emails that may not fit within the parameters set forth above.

*     *     *

While we recognize that this may impose a burden on you, it is absolutely necessary that you fully comply with your obligations to reasonably retain and preserve Evidence. We appreciate your efforts in this regard.

Please contact me if you have any questions, or to meet-and-confer about the matters discussed above. Further, please acknowledge your receipt of this letter by sending me an email or by returning a copy of this letter with your signature in the space provided below.

Sincerely,

Cameron P. Hoffman
Division of Enforcement

I acknowledge that I received this letter
on the __ day of _____, 2015:

_____

# EXHIBIT 7

**Hoffman, Cameron**

| | |
|---|---|
| **From:** | John Corrigan <jcorrigan@corriganbaker.com> |
| **Sent:** | Wednesday, May 06, 2015 8:39 AM |
| **To:** | Hoffman, Cameron |
| **Subject:** | Netcirq, LLC |
| **Attachments:** | 4-7-15 letter to NetCirq.pdf |

Dear Attorney Hoffman,

I am Kristen Wade's attorney (and Uncle) and am following up on your letter of April 7, 2015 (attached). I wanted to see what your calendar looks like next week for a time to have a discussion about your expectations and how Kristen can of course cooperate with the SEC's current investigation with the least possible disruption of her business which is essentially a one-band band and not a large company with unlimited resources.

My schedule is quite open next week (especially Wed-Fri) so please let me know if you have any time to talk. If not good for you next week then please propose some dates and times the following week which are good for you.

Also, thank you for your patience as I just moved back here from FL to NY in middle of April so have been running around trying to keep clients happy while finding a new home and welcoming a new partner as of 4/30! Kristen also just got married so we have been like two ships passing in the night leaving VM's to each other trying to connect. Regardless, I can assure you that first and foremost she has not touched any of her records and understands the spoliation implication issue and concerns of the govt. in ensuring potential evidence is protected.

Regards,

John P. Corrigan
Corrigan, Baker & Levine, LLC
140 Grand Street, Ste. 501
White Plains, NY 10601
(w) 914.468.0191
(c) 914.424.1444
(f) 914.339.0608
www.corriganbaker.com

# EXHIBIT 8

**Hoffman, Cameron**

| | |
|---|---|
| **From:** | Hoffman, Cameron |
| **Sent:** | Wednesday, May 06, 2015 3:03 PM |
| **To:** | John Corrigan |
| **Subject:** | RE: Netcirq, LLC |
| **Attachments:** | Netcirq Document Subpoena (5-6-15).pdf |

Mr. Corrigan,

Please see attached.

Regards,
Cameron

---

**From:** John Corrigan [mailto:jcorrigan@corriganbaker.com]
**Sent:** Wednesday, May 06, 2015 9:00 AM
**To:** Hoffman, Cameron
**Subject:** RE: Netcirq, LLC

Thank you Cameron, 9:30 PST on the 15th (Fri) works for me. Call me on 914.468.0191 (business line).

Appreciate the focus on the subpoena being as well defined as it can be as Kristen is just doing a few private placement transactions for her corporate clients over last few years while raising kids.

Regards,

John P. Corrigan
Corrigan, Baker & Levine, LLC
140 Grand Street, Ste. 501
White Plains, NY 10601
(w) 914.468.0191
(c) 914.424.1444
(f)  914.339.0608
www.corriganbaker.com

**From:** Hoffman, Cameron [mailto:HoffmanC@sec.gov]
**Sent:** Wednesday, May 06, 2015 11:54 AM
**To:** John Corrigan
**Subject:** RE: Netcirq, LLC

Mr. Corrigan,

Thank you for your reply, and your confirmation regarding document preservation. How about 9:30am Pacific on Thursday 5/14 or Friday 5/15 for a call? In the interim, I have prepared a document subpoena to Netcirq that I will get out to you later today, so that you can get a better sense of what documents and information I would like to receive from Netcirq and have a chance to get your arms around what the company has before our call.

Regards,
Cameron

1

Cameron P. Hoffman
Attorney, Division of Enforcement
U.S. Securities & Exchange Commission
44 Montgomery Street, Suite 2800
San Francisco, CA 94104
(415) 705-2455 (t)
(415) 705-2501 (f)
HoffmanC@sec.gov

---

**From:** John Corrigan [mailto:jcorrigan@corriganbaker.com]
**Sent:** Wednesday, May 06, 2015 8:39 AM
**To:** Hoffman, Cameron
**Subject:** Netcirq, LLC

Dear Attorney Hoffman,

I am Kristen Wade's attorney (and Uncle) and am following up on your letter of April 7, 2015 (attached). I wanted to see what your calendar looks like next week for a time to have a discussion about your expectations and how Kristen can of course cooperate with the SEC's current investigation with the least possible disruption of her business which is essentially a one-band band and not a large company with unlimited resources.

My schedule is quite open next week (especially Wed-Fri) so please let me know if you have any time to talk. If not good for you next week then please propose some dates and times the following week which are good for you.

Also, thank you for your patience as I just moved back here from FL to NY in middle of April so have been running around trying to keep clients happy while finding a new home and welcoming a new partner as of 4/30! Kristen also just got married so we have been like two ships passing in the night leaving VM's to each other trying to connect. Regardless, I can assure you that first and foremost she has not touched any of her records and understands the spoliation implication issue and concerns of the govt. in ensuring potential evidence is protected.

Regards,

John P. Corrigan
Corrigan, Baker & Levine, LLC
140 Grand Street, Ste. 501
White Plains, NY 10601
(w) 914.468.0191
(c) 914.424.1444
(f)  914.339.0608
www.corriganbaker.com



UNITED STATES
SECURITIES AND EXCHANGE COMMISSION
SAN FRANCISCO REGIONAL OFFICE
44 Montgomery Street
SUITE 2800
SAN FRANCISCO, CALIFORNIA 94104

DIRECT DIAL: (415) 705-2455
EMAIL: HOFFMANC@SEC.GOV

May 6, 2015

## EMAIL AND OVERNIGHT DELIVERY

Netcirq, LLC
c/o John P. Corrigan
Corrigan, Baker & Levine, LLC
140 Grand Street, Ste. 501
White Plains, NY 10601

Re:   In the Matter of Secondary Market Trading by Pre-IPO
      Shareholders (SF-03983)

Dear Mr. Corrigan:

As you know, the staff of the Securities and Exchange Commission is conducting an investigation in the matter identified above. The enclosed subpoena has been issued to Netcirq, LLC (the "Company") as part of this investigation. **The subpoena requires the Company to give us documents.**

Please read the subpoena and this letter carefully. This letter answers some questions the Company may have about the subpoena. You should also read the enclosed SEC Form 1662. The Company must comply with the subpoena. The Company may be subject to a fine and imprisonment if it does not.

### Producing Documents

*What materials do I have to produce?*

The subpoena requires the Company to give us the documents described in the attachment to the subpoena. **The Company must provide these documents by May 20, 2015.** The attachment to the subpoena defines some terms (such as "document") before listing what the Company must provide.

Please note that if copies of a document differ in any way, they are considered separate documents and the Company must send each one. For example, if the Company has two copies of the same letter, but only one of them has handwritten notes on it, the Company must send both the clean copy and the one with notes.

If the Company prefers, it may send us photocopies of the originals. The Commission cannot reimburse the Company for the copying costs. The copies must be identical to the

Netcirq, LLC
May 6, 2015
Page 2

originals, including even faint marks or print. If the Company chooses to send copies, the
Company must keep the originals in a safe place. The staff will accept the copies for now, but
may require the Company to produce the originals later.

*Do I need to send anything else?*

The Company should enclose a list briefly describing each item it sends. The list should state
which paragraph(s) in the subpoena attachment each item responds to. A copy of the subpoena
should be included with the documents that are produced.

Passwords for documents, files, compressed archives, and encrypted media should be
provided separately either via email addressed to ENF-CPU@sec.gov, or in a separate cover
letter mailed separately from the data.

Please include a cover letter stating whether the Company believes it has met its
obligations under the subpoena by searching carefully and thoroughly for everything called for
by the subpoena, and sending it all to us.

*What if I do not send everything described in the attachment to the subpoena?*

The subpoena requires the Company to send all the materials described in it. If, for any
reason—including a claim of attorney-client privilege—the Company does not produce
something called for by the subpoena, the Company should submit a list of what it is not
producing. The list should describe each item separately, noting:

- its author(s);

- its date;

- its subject matter;

- the name of the person who has the item now, or the last person known to have it;

- the names of everyone who ever had the item or a copy of it, and the names of
  everyone who was told the item's contents; and

- the reason the Company did not produce the item.

If the Company withholds anything on the basis of a claim of attorney-client privilege or
attorney work product protection, it should also identify the attorney and client involved.

*Where should I send the materials?*

Please deliver the production, along with any passwords for encrypted media, to **both** of
the following **two** recipients:

Cameron P. Hoffman
U.S. Securities and Exchange Commission
San Francisco Regional Office
44 Montgomery Street, Suite 2800
San Francisco, CA 94104

Netcirq, LLC
May 6, 2015
Page 3

> ENF-CPU
> U.S. Securities and Exchange Commission
> 100 F St., N.E., Mailstop 5973
> Washington, DC 20549-5973

For smaller electronic productions under 10MB in size, the materials may be emailed to the following email address: ENF-CPU@sec.gov.

### Other Important Information

*May I have a lawyer help me respond to the subpoena?*

Yes. The Company has the right to consult with and be represented by its own lawyer in this matter. We cannot give you legal advice.

*What will the Commission do with the materials I send and the testimony I provide?*

The enclosed SEC Form 1662 includes a List of Routine Uses of information provided to the Commission. This form has other important information for you. Please read it carefully.

*Has the Commission determined that anyone has done anything wrong?*

This investigation is a non-public, fact-finding inquiry. We are trying to determine whether there have been any violations of the federal securities laws. The investigation and the subpoena do not mean that we have concluded that the Company or anyone else has broken the law. Also, the investigation does not mean that we have a negative opinion of any person, entity or security.

*Important Policy Concerning Settlements*

Please note that, in any matter in which enforcement action is ultimately deemed to be warranted, the Division of Enforcement will not recommend any settlement to the Commission unless the party wishing to settle certifies, under penalty of perjury, that all documents responsive to Commission subpoenas and formal and informal document requests in this matter have been produced.

*I have read this letter, the subpoena, and the SEC Form 1662, but I still have questions. What should I do?*

If the Company has any other questions, please contact me at (415) 705-2455.

Sincerely,

Cameron P. Hoffman
Attorney, Division of Enforcement

Enclosure:   Subpoena
             SEC Form 1662



## SUBPOENA

# UNITED STATES OF AMERICA
## SECURITIES AND EXCHANGE COMMISSION

### In the Matter of Secondary Trading by Pre-IPO Shareholders (SF-03983)

To:   Netcirq, LLC
      c/o John P. Corrigan
      Corrigan, Baker & Levine, LLC
      140 Grand Street, Ste. 501
      White Plains, NY 10601

☒   **YOU MUST PRODUCE** everything specified in the Attachment to this subpoena to officers of the Securities and Exchange Commission, at the place and by the date and time specified below:

44 Montgomery Street, Suite 2800, San Francisco, CA 94104, **May 20, 2015, 5:00 p.m.**

☐   **YOU MUST TESTIFY** before officers of the Securities and Exchange Commission, at the place, date and time specified below:

---

**FEDERAL LAW REQUIRES YOU TO COMPLY WITH THIS SUBPOENA.**
   Failure to comply may subject you to a fine and/or imprisonment.

By:  _____          Date:  May 6, 2015
     Cameron P. Hoffman
     U.S. Securities and Exchange Commission
     44 Montgomery Street, 28th Floor
     San Francisco, CA 94104
     (415) 705-2455

I am an officer of the Securities and Exchange Commission authorized to issue subpoenas in this matter. The Securities and Exchange Commission has issued a Formal Order authorizing this investigation under Section 21(a) of the Securities Exchange Act of 1934.

---

NOTICE TO WITNESS:     If you claim a witness fee or mileage, submit this subpoena with the claim voucher.

**ATTACHMENT**

**Subpoena to Netcirq, LLC**
**In the Matter of Secondary Market Trading by Pre-IPO Shareholders (SF-03983)**
**May 6, 2015**

**INSTRUCTIONS**

This subpoena requires the production of certain documents and items, as specified in the section entitled "Production" below. The required documents and information should be produced in accordance with the following requirements:

A.   You must submit all items required to be produced by the subpoena that are in your possession, custody, or subject to your control, regardless of whether the documents are in your possession.

B.   If you claim attorney-client privilege, or any other privilege or protection from production, provide a list of the documents that you claim are privileged or protected, indicating the date prepared, authors, all recipients, the subject matters of the document, and the privilege or protection claimed, sufficiently identifying the documents to permit the staff to determine whether to request an in camera inspection by a federal district court judge.

C.   Produce the entirety of each and every document or item described below, without alteration, deletion, redaction, or obliteration of any information contained therein, even though such information is not specifically requested.

D.   The following rules of construction apply to this subpoena and attachment: (1) the connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the attachment all responses that might otherwise be construed to be outside of its scope; and (2) the use of the singular form of any word includes the plural and vice versa.

**DEFINITIONS**

A.   The term "NETCIRQ" means Netcirq, LLC, and all of its parents, U.S. and non-U.S. subsidiaries, divisions, affiliates, predecessors, successors, officers, directors, employees, agents, partners, limited partners, and independent contractors, as well as aliases, code names, trade names, or business names used by, or formerly used by, any of the foregoing.

B.   The terms "DOCUMENT" and "DOCUMENTS" mean any and all records, whether drafts or final versions, originals or annotated or non-identical copies, however and by whomever created, produced, or stored (manually, mechanically, electronically, or otherwise), including, but not limited to, books, papers, files, notes, account statements, confirmations, reports, correspondence, letters, memoranda, electronic files, computer records, computer

programs, e-mail, Internet sites, World Wide Web pages, ledger sheets, telegrams, telexes, telephone bills, messages or logs, handwritten notes, minutes of conversations or meetings, contracts, agreements, calendars, datebooks, diaries, records of billings, checks, receipts, wire transfers, drafts for money, records of payment, data, magnetic tape, tape recordings, disks, diskettes, diskpacks or other electronic media, back-up tapes, microfilm, microfiche, and other storage devices. "DOCUMENT" and "DOCUMENTS" shall also include all "writings," "recordings," and "photographs" as defined by Rule 1001 of the Federal Rules of Evidence and all "books," "documents," and "tangible things" as those terms are used in Rules 26 and 34 of the Federal Rules of Civil Procedure.

C.      The terms "COMMUNICATION" and "COMMUNICATIONS" mean any and all written, oral, telephonic, or other utterances of any nature whatsoever, shared, shown, and/or transferred between and/or among any two or more persons or entities, including, but noted limited to, any statements, inquiries, discussions, conversations, dialogues, correspondence, consultations, negotiations, agreements, understandings, meetings, letters, e-mails, notations, telegrams, advertisements, interviews, and all other documents.

D.      The term "RELATING TO" means constitutes, contains, discusses, embodies, evidences, reflects, identifies, states, refers to, deals with, bears upon, or is in any way pertinent to that subject.

## TIME PERIOD OF PRODUCTION

Unless indicated otherwise, this subpoena and attachment seeks documents from January 1, 2011 to the present.

## PRODUCTION

You are required to produce the following documents:

1. DOCUMENTS sufficient to describe the roles and responsibilities of Kristen McRedmond Wade, Ahmed Abu Deiab, James Nelson, and Christopher Chan with respect to NETCIRQ.

2. For all potential or consummated transactions (including but not limited to any investments, private placements, financings, or loans) involving NETCIRQ and any security of an unregistered issuer purchased from any person or entity other than directly from the issuer:
   a. All DOCUMENTS RELATING TO the transaction;
   b. All COMMUNICATIONS RELATING TO the transaction;
   c. All DOCUMENTS RELATING TO NETCIRQ's role in the transaction; and,
   d. All COMMUNICATIONS with the shareholder(s), investor(s) and/or private company whose securities are involved in the transaction.

3. DOCUMENTS sufficient to identify all investors who have invested in any transaction involving NETCIRQ, including;
   a. Name, address, phone number and accreditation status;
   b. Date and amount of investment;
   c. Any agreements signed with NETCIRQ; and,
   d. Any disclosures or agreements provided to the investor(s).

4. All DOCUMENTS and COMMUNICATIONS RELATING TO any potential or consummated transaction involving NETCIRQ and any of the following activities listed on NETCIRQ's website: creating a "private equity marketplace," "help[ing] shareholder get liquidity by reselling your stock" or "invest[ing] in restricted secondary interests in common/preferred stock."

5. All DOCUMENTS and COMMUNICATIONS RELATING TO any potential or consummated transaction in which NETCIRQ made a direct investment in any security of an unregistered issuer purchased from any person or entity other than directly from the issuer.

6. All DOCUMENTS and COMMUNICATIONS RELATING TO any potential or consummated transaction involving NETCIRQ and any of the following activities listed on Ms. Wade's LinkedIn profile: "creating a secondary market for private equity and venture capital," "reselling private securities and portfolio interests to create a secondary market for private equity" or "find[ing]" buyers for your shares at the best possible valuation."

7. All DOCUMENTS and COMMUNICATIONS RELATING TO any potential or consummated transaction involving NETCIRQ and the system and/or method described in the patent(s) or patent applications entitled "System and Method for Business to Investor Exchange for Raising Capital and For Creating a Secondary Market for Private Equity."

8. All DOCUMENTS RELATING TO the registration of NETCIRQ as a broker-dealer.

# SECURITIES AND EXCHANGE COMMISSION
## Washington, D.C. 20549

### Supplemental Information for Persons Requested to Supply
### Information Voluntarily or Directed to Supply Information
### Pursuant to a Commission Subpoena

**A. False Statements and Documents.**

Section 1001 of Title 18 of the United States Code provides as follows:

> [W]hoever, in any matter within the jurisdiction of the executive, legislative, or judicial branch of the Government of the United States, knowingly and willfully—
> (1) falsifies, conceals, or covers up by any trick, scheme, or device a material fact;
> (2) makes any materially false, fictitious, or fraudulent statement or representation; or
> (3) makes or uses any false writing or document knowing the same to contain any materially false, fictitious, or fraudulent statement or entry;
> shall be fined under this title, imprisoned not more than 5 years . . . or both.

**B. Testimony**

If your testimony is taken, you should be aware of the following:

1. *Record.* Your testimony will be transcribed by a reporter. If you desire to go off the record, please indicate this to the Commission employee taking your testimony, who will determine whether to grant your request. The reporter will not go off the record at your, or your counsel's, direction.

2. *Counsel.* You have the right to be accompanied, represented and advised by counsel of your choice. Your counsel may advise you before, during and after your testimony; question you briefly at the conclusion of your testimony to clarify any of the answers you give during testimony; and make summary notes during your testimony solely for your use. If you are accompanied by counsel, you may consult privately.

If you are not accompanied by counsel, please advise the Commission employee taking your testimony if, during the testimony, you desire to be accompanied, represented and advised by counsel. Your testimony will be adjourned once to afford you the opportunity to arrange to be so accompanied, represented or advised.

You may be represented by counsel who also represents other persons involved in the Commission's investigation. This multiple representation, however, presents a potential conflict of interest if one client's interests are or may be adverse to another's. If you are represented by counsel who also represents other persons involved in the investigation, the Commission will assume that you and counsel have discussed and resolved all issues concerning possible conflicts of interest. The choice of counsel, and the responsibility for that choice, is yours.

3. *Transcript Availability.* Rule 6 of the Commission's Rules Relating to Investigations, 17 CFR 203.6, states:

> A person who has submitted documentary evidence or testimony in a formal investigative proceeding shall be entitled, upon written request, to procure a copy of his documentary evidence or a transcript of his testimony on payment of the appropriate fees: *Provided, however,* That in a nonpublic formal investigative proceeding the Commission may for good cause deny such request. In any event, any witness, upon proper identification, shall have the right to inspect the official transcript of the witness' own testimony.

If you wish to purchase a copy of the transcript of your testimony, the reporter will provide you with a copy of the appropriate form. Persons requested to supply information voluntarily will be allowed the rights provided by this rule.

4. *Perjury.* Section 1621 of Title 18 of the United States Code provides as follows:

> Whoever—
> (1) having taken an oath before a competent tribunal, officer, or person, in any case in which a law of the United States authorizes an oath to be administered, that he will testify, declare, depose, or certify truly, or that any written testimony, declaration, deposition, or certificate by him subscribed, is true, willfully and contrary to such oath states or subscribes any material matter which he does not believe to be true; or

SEC 1662 (09-14)

(2) in any declaration, certificate, verification, or statement under penalty of perjury as permitted under section 1746 of title 28, United States Code, willfully subscribes as true any material matter which he does not believe to be true;

is guilty of perjury and shall, except as otherwise expressly provided by law, be fined under this title or imprisoned not more than five years, or both.

5.   *Fifth Amendment and Voluntary Testimony.* Information you give may be used against you in any federal, state, local or foreign administrative, civil or criminal proceeding brought by the Commission or any other agency.

You may refuse, in accordance with the rights guaranteed to you by the Fifth Amendment to the Constitution of the United States, to give any information that may tend to incriminate you.

If your testimony is not pursuant to subpoena, your appearance to testify is voluntary, you need not answer any question, and you may leave whenever you wish. Your cooperation is, however, appreciated.

6.   *Formal Order Availability.* If the Commission has issued a formal order of investigation, it will be shown to you during your testimony, at your request. If you desire a copy of the formal order, please make your request in writing.

## C.  Submissions and Settlements

Rule 5(c) of the Commission's Rules on Informal and Other Procedures, 17 CFR 202.5(c), states:

> Persons who become involved in . . . investigations may, on their own initiative, submit a written statement to the Commission setting forth their interests and position in regard to the subject matter of the investigation. Upon request, the staff, in its discretion, may advise such persons of the general nature of the investigation, including the indicated violations as they pertain to them, and the amount of time that may be available for preparing and submitting a statement prior to the presentation of a staff recommendation to the Commission for the commencement of an administrative or injunction proceeding. Submissions by interested persons should be forwarded to the appropriate Division Director or Regional Director with a copy to the staff members conducting the investigation and should be clearly referenced to the specific investigation to which they relate. In the event a recommendation for the commencement of an enforcement proceeding is presented by the staff, any submissions by interested persons will be forwarded to the Commission in conjunction with the staff memorandum.

The staff of the Commission routinely seeks to introduce submissions made pursuant to Rule 5(c) as evidence in Commission enforcement proceedings, when the staff deems appropriate.

Rule 5(f) of the Commission's Rules on Informal and Other Procedures, 17 CFR 202.5(f), states:

> In the course of the Commission's investigations, civil lawsuits, and administrative proceedings, the staff, with appropriate authorization, may discuss with persons involved the disposition of such matters by consent, by settlement, or in some other manner. It is the policy of the Commission, however, that the disposition of any such matter may not, expressly or impliedly, extend to any criminal charges that have been, or may be, brought against any such person or any recommendation with respect thereto. Accordingly, any person involved in an enforcement matter before the Commission who consents, or agrees to consent, to any judgment or order does so solely for the purpose of resolving the claims against him in that investigative, civil, or administrative matter and not for the purpose of resolving any criminal charges that have been, or might be, brought against him. This policy reflects the fact that neither the Commission nor its staff has the authority or responsibility for instituting, conducting, settling, or otherwise disposing of criminal proceedings. That authority and responsibility are vested in the Attorney General and representatives of the Department of Justice.

## D.  Freedom of Information Act

The Freedom of Information Act, 5 U.S.C. 552 (the "FOIA"), generally provides for disclosure of information to the public. Rule 83 of the Commission's Rules on Information and Requests, 17 CFR 200.83, provides a procedure by which a person can make a written request that information submitted to the Commission not be disclosed under the FOIA. That rule states that no determination as to the validity of such a request will be made until a request for disclosure of the information under the FOIA is received. Accordingly, no response to a request that information not be disclosed under the FOIA is necessary or will be given until a request for disclosure under the FOIA is received. If you desire an acknowledgment of receipt of your written request that information not be disclosed under the FOIA, please provide a duplicate request, together with a stamped, self-addressed envelope.

### E. Authority for Solicitation of Information

*Persons Directed to Supply Information Pursuant to Subpoena.* The authority for requiring production of information is set forth in the subpoena. Disclosure of the information to the Commission is mandatory, subject to the valid assertion of any legal right or privilege you might have.

*Persons Requested to Supply Information Voluntarily.* One or more of the following provisions authorizes the Commission to solicit the information requested: Sections 19 and/or 20 of the Securities Act of 1933; Section 21 of the Securities Exchange Act of 1934; Section 321 of the Trust Indenture Act of 1939; Section 42 of the Investment Company Act of 1940; Section 209 of the Investment Advisers Act of 1940; and 17 CFR 202.5. Disclosure of the requested information to the Commission is voluntary on your part.

### F. Effect of Not Supplying Information

*Persons Directed to Supply Information Pursuant to Subpoena.* If you fail to comply with the subpoena, the Commission may seek a court order requiring you to do so. If such an order is obtained and you thereafter fail to supply the information, you may be subject to civil and/or criminal sanctions for contempt of court. In addition, if the subpoena was issued pursuant to the Securities Exchange Act of 1934, the Investment Company Act of 1940, and/or the Investment Advisers Act of 1940, and if you, without just cause, fail or refuse to attend and testify, or to answer any lawful inquiry, or to produce books, papers, correspondence, memoranda, and other records in compliance with the subpoena, you may be found guilty of a misdemeanor and fined not more than $1,000 or imprisoned for a term of not more than one year, or both.

*Persons Requested to Supply Information Voluntarily.* There are no direct sanctions and thus no direct effects for failing to provide all or any part of the requested information.

### G. Principal Uses of Information

The Commission's principal purpose in soliciting the information is to gather facts in order to determine whether any person has violated, is violating, or is about to violate any provision of the federal securities laws or rules for which the Commission has enforcement authority, such as rules of securities exchanges and the rules of the Municipal Securities Rulemaking Board. Facts developed may, however, constitute violations of other laws or rules. Information provided may be used in Commission and other agency enforcement proceedings. Unless the Commission or its staff explicitly agrees to the contrary in writing, you should not assume that the Commission or its staff acquiesces in, accedes to, or concurs or agrees with, any position, condition, request, reservation of right, understanding, or any other statement that purports, or may be deemed, to be or to reflect a limitation upon the Commission's receipt, use, disposition, transfer, or retention, in accordance with applicable law, of information provided.

### H. Routine Uses of Information

The Commission often makes its files available to other governmental agencies, particularly United States Attorneys and state prosecutors. There is a likelihood that information supplied by you will be made available to such agencies where appropriate. Whether or not the Commission makes its files available to other governmental agencies is, in general, a confidential matter between the Commission and such other governmental agencies.

Set forth below is a list of the routine uses which may be made of the information furnished.

1. To appropriate agencies, entities, and persons when (a) it is suspected or confirmed that the security or confidentiality of information in the system of records has been compromised; (b) the SEC has determined that, as a result of the suspected or confirmed compromise, there is a risk of harm to economic or property interests, identity theft or fraud, or harm to the security or integrity of this system or other systems or programs (whether maintained by the SEC or another agency or entity) that rely upon the compromised information; and (c) the disclosure made to such agencies, entities, and persons is reasonably necessary to assist in connection with the SEC's efforts to respond to the suspected or confirmed compromise and prevent, minimize, or remedy such harm.

2. To other federal, state, local, or foreign law enforcement agencies; securities self-regulatory organizations; and foreign financial regulatory authorities to assist in or coordinate regulatory or law enforcement activities with the SEC.

3. To national securities exchanges and national securities associations that are registered with the SEC, the Municipal Securities Rulemaking Board; the Securities Investor Protection Corporation; the Public Company Accounting Oversight Board; the federal banking authorities, including, but not limited to, the Board of Governors of the Federal Reserve System, the Comptroller of the Currency, and the Federal Deposit Insurance Corporation; state securities regulatory agencies or organizations; or regulatory authorities of a foreign government in connection with their regulatory or enforcement responsibilities.

4.  By SEC personnel for purposes of investigating possible violations of, or to conduct investigations authorized by, the federal securities laws.

5.  In any proceeding where the federal securities laws are in issue or in which the Commission, or past or present members of its staff, is a party or otherwise involved in an official capacity.

6.  In connection with proceedings by the Commission pursuant to Rule 102(e) of its Rules of Practice, 17 CFR 201.102(e).

7.  To a bar association, state accountancy board, or other federal, state, local, or foreign licensing or oversight authority; or professional association or self-regulatory authority to the extent that it performs similar functions (including the Public Company Accounting Oversight Board) for investigations or possible disciplinary action.

8.  To a federal, state, local, tribal, foreign, or international agency, if necessary to obtain information relevant to the SEC's decision concerning the hiring or retention of an employee; the issuance of a security clearance; the letting of a contract; or the issuance of a license, grant, or other benefit.

9.  To a federal, state, local, tribal, foreign, or international agency in response to its request for information concerning the hiring or retention of an employee; the issuance of a security clearance; the reporting of an investigation of an employee; the letting of a contract; or the issuance of a license, grant, or other benefit by the requesting agency, to the extent that the information is relevant and necessary to the requesting agency's decision on the matter.

10.  To produce summary descriptive statistics and analytical studies, as a data source for management information, in support of the function for which the records are collected and maintained or for related personnel management functions or manpower studies; may also be used to respond to general requests for statistical information (without personal identification of individuals) under the Freedom of Information Act.

11.  To any trustee, receiver, master, special counsel, or other individual or entity that is appointed by a court of competent jurisdiction, or as a result of an agreement between the parties in connection with litigation or administrative proceedings involving allegations of violations of the federal securities laws (as defined in section 3(a)(47) of the Securities Exchange Act of 1934, 15 U.S.C. 78c(a)(47)) or pursuant to the Commission's Rules of Practice, 17 CFR 201.100 – 900 or the Commission's Rules of Fair Fund and Disgorgement Plans, 17 CFR 201.1100-1106, or otherwise, where such trustee, receiver, master, special counsel, or other individual or entity is specifically designated to perform particular functions with respect to, or as a result of, the pending action or proceeding or in connection with the administration and enforcement by the Commission of the federal securities laws or the Commission's Rules of Practice or the Rules of Fair Fund and Disgorgement Plans.

12.  To any persons during the course of any inquiry, examination, or investigation conducted by the SEC's staff, or in connection with civil litigation, if the staff has reason to believe that the person to whom the record is disclosed may have further information about the matters related therein, and those matters appeared to be relevant at the time to the subject matter of the inquiry.

13.  To interns, grantees, experts, contractors, and others who have been engaged by the Commission to assist in the performance of a service related to this system of records and who need access to the records for the purpose of assisting the Commission in the efficient administration of its programs, including by performing clerical, stenographic, or data analysis functions, or by reproduction of records by electronic or other means. Recipients of these records shall be required to comply with the requirements of the Privacy Act of 1974, as amended, 5 U.S.C. 552a.

14.  In reports published by the Commission pursuant to authority granted in the federal securities laws (as such term is defined in section 3(a)(47) of the Securities Exchange Act of 1934, 15 U.S.C. 78c(a)(47)), which authority shall include, but not be limited to, section 21(a) of the Securities Exchange Act of 1934, 15 U.S.C. 78u(a)).

15.  To members of advisory committees that are created by the Commission or by Congress to render advice and recommendations to the Commission or to Congress, to be used solely in connection with their official designated functions.

16.  To any person who is or has agreed to be subject to the Commission's Rules of Conduct, 17 CFR 200.735-1 to 200.735-18, and who assists in the investigation by the Commission of possible violations of the federal securities laws (as such term is defined in section 3(a)(47) of the Securities Exchange Act of 1934, 15 U.S.C. 78c(a)(47)), in the preparation or conduct of enforcement actions brought by the Commission for such violations, or otherwise in connection with the Commission's enforcement or regulatory functions under the federal securities laws.

17. To a Congressional office from the record of an individual in response to an inquiry from the Congressional office made at the request of that individual.

18. To members of Congress, the press, and the public in response to inquiries relating to particular Registrants and their activities, and other matters under the Commission's jurisdiction.

19. To prepare and publish information relating to violations of the federal securities laws as provided in 15 U.S.C. 78c(a)(47)), as amended.

20. To respond to subpoenas in any litigation or other proceeding.

21. To a trustee in bankruptcy.

22. To any governmental agency, governmental or private collection agent, consumer reporting agency or commercial reporting agency, governmental or private employer of a debtor, or any other person, for collection, including collection by administrative offset, federal salary offset, tax refund offset, or administrative wage garnishment, of amounts owed as a result of Commission civil or administrative proceedings.

* * * * *

*Small Business Owners*: The SEC always welcomes comments on how it can better assist small businesses. If you would like more information, or have questions or comments about federal securities regulations as they affect small businesses, please contact the Office of Small Business Policy, in the SEC's Division of Corporation Finance, at 202-551-3460. If you would prefer to comment to someone outside of the SEC, you can contact the Small Business Regulatory Enforcement Ombudsman at http://www.sba.gov/ombudsman or toll free at 888-REG-FAIR. The Ombudsman's office receives comments from small businesses and annually evaluates federal agency enforcement activities for their responsiveness to the special needs of small business.

# EXHIBIT 9



**UNITED STATES**
**SECURITIES AND EXCHANGE COMMISSION**
**SAN FRANCISCO REGIONAL OFFICE**
**44 Montgomery Street**
SUITE 2800
SAN FRANCISCO, CALIFORNIA 94104

DIRECT DIAL: (415) 705-2455
EMAIL: HOFFMANC@SEC.GOV

May 6, 2015

**EMAIL AND OVERNIGHT DELIVERY**

Netcirq, LLC
c/o John P. Corrigan
Corrigan, Baker & Levine, LLC
140 Grand Street, Ste. 501
White Plains, NY 10601

Re:   In the Matter of Secondary Market Trading by Pre-IPO
      Shareholders (SF-03983)

Dear Mr. Corrigan:

As you know, the staff of the Securities and Exchange Commission is conducting an investigation in the matter identified above. The enclosed subpoena has been issued to Netcirq, LLC (the "Company") as part of this investigation. **The subpoena requires the Company to give us documents.**

Please read the subpoena and this letter carefully. This letter answers some questions the Company may have about the subpoena. You should also read the enclosed SEC Form 1662. The Company must comply with the subpoena. The Company may be subject to a fine and imprisonment if it does not.

**Producing Documents**

*What materials do I have to produce?*

The subpoena requires the Company to give us the documents described in the attachment to the subpoena. **The Company must provide these documents by May 20, 2015.** The attachment to the subpoena defines some terms (such as "document") before listing what the Company must provide.

Please note that if copies of a document differ in any way, they are considered separate documents and the Company must send each one. For example, if the Company has two copies of the same letter, but only one of them has handwritten notes on it, the Company must send both the clean copy and the one with notes.

If the Company prefers, it may send us photocopies of the originals. The Commission cannot reimburse the Company for the copying costs. The copies must be identical to the

Netcirq, LLC
May 6, 2015
Page 2

originals, including even faint marks or print.  If the Company chooses to send copies, the Company **must** keep the originals in a safe place.  The staff will accept the copies for now, but may require the Company to produce the originals later.

*Do I need to send anything else?*

The Company should enclose a list briefly describing each item it sends.  The list should state which paragraph(s) in the subpoena attachment each item responds to.  A copy of the subpoena should be included with the documents that are produced.

Passwords for documents, files, compressed archives, and encrypted media should be provided separately either via email addressed to ENF-CPU@sec.gov, or in a separate cover letter mailed separately from the data.

Please include a cover letter stating whether the Company believes it has met its obligations under the subpoena by searching carefully and thoroughly for everything called for by the subpoena, and sending it all to us.

*What if I do not send everything described in the attachment to the subpoena?*

The subpoena requires the Company to send all the materials described in it.  If, for any reason—including a claim of attorney-client privilege—the Company does not produce something called for by the subpoena, the Company should submit a list of what it is not producing.  The list should describe each item separately, noting:

- its author(s);
- its date;
- its subject matter;
- the name of the person who has the item now, or the last person known to have it;
- the names of everyone who ever had the item or a copy of it, and the names of everyone who was told the item's contents; and
- the reason the Company did not produce the item.

If the Company withholds anything on the basis of a claim of attorney-client privilege or attorney work product protection, it should also identify the attorney and client involved.

*Where should I send the materials?*

Please deliver the production, along with any passwords for encrypted media, to **both** of the following **two** recipients:

Cameron P. Hoffman
U.S. Securities and Exchange Commission
San Francisco Regional Office
44 Montgomery Street, Suite 2800
San Francisco, CA  94104

Netcirq, LLC
May 6, 2015
Page 3

ENF-CPU
U.S. Securities and Exchange Commission
100 F St., N.E., Mailstop 5973
Washington, DC 20549-5973

For smaller electronic productions under 10MB in size, the materials may be emailed to the following email address: ENF-CPU@sec.gov.

**Other Important Information**

*May I have a lawyer help me respond to the subpoena?*

Yes.  The Company has the right to consult with and be represented by its own lawyer in this matter.  We cannot give you legal advice.

*What will the Commission do with the materials I send and the testimony I provide?*

The enclosed SEC Form 1662 includes a List of Routine Uses of information provided to the Commission.  This form has other important information for you.  Please read it carefully.

*Has the Commission determined that anyone has done anything wrong?*

This investigation is a non-public, fact-finding inquiry.  We are trying to determine whether there have been any violations of the federal securities laws.  The investigation and the subpoena do not mean that we have concluded that the Company or anyone else has broken the law.  Also, the investigation does not mean that we have a negative opinion of any person, entity or security.

*Important Policy Concerning Settlements*

Please note that, in any matter in which enforcement action is ultimately deemed to be warranted, the Division of Enforcement will not recommend any settlement to the Commission unless the party wishing to settle certifies, under penalty of perjury, that all documents responsive to Commission subpoenas and formal and informal document requests in this matter have been produced.

*I have read this letter, the subpoena, and the SEC Form 1662, but I still have questions. What should I do?*

If the Company has any other questions, please contact me at (415) 705-2455.

Sincerely,

Cameron P. Hoffman
Attorney, Division of Enforcement

Enclosure:     Subpoena
               SEC Form 1662



# SUBPOENA

# UNITED STATES OF AMERICA
## SECURITIES AND EXCHANGE COMMISSION

### In the Matter of Secondary Trading by Pre-IPO Shareholders (SF-03983)

To:    Netcirq, LLC
       c/o John P. Corrigan
       Corrigan, Baker & Levine, LLC
       140 Grand Street, Ste. 501
       White Plains, NY 10601

☒    **YOU MUST PRODUCE** everything specified in the Attachment to this subpoena to officers of the Securities and Exchange Commission, at the place and by the date and time specified below:

44 Montgomery Street, Suite 2800, San Francisco, CA 94104, **May 20, 2015, 5:00 p.m.**

☐    **YOU MUST TESTIFY** before officers of the Securities and Exchange Commission, at the place, date and time specified below:

**FEDERAL LAW REQUIRES YOU TO COMPLY WITH THIS SUBPOENA.**
   Failure to comply may subject you to a fine and/or imprisonment.

By: _____          Date:  May 6, 2015
   Cameron P. Hoffman
   U.S. Securities and Exchange Commission
   44 Montgomery Street, 28th Floor
   San Francisco, CA 94104
   (415) 705-2455

I am an officer of the Securities and Exchange Commission authorized to issue subpoenas in this matter. The Securities and Exchange Commission has issued a Formal Order authorizing this investigation under Section 21(a) of the Securities Exchange Act of 1934.

NOTICE TO WITNESS:      If you claim a witness fee or mileage, submit this subpoena with the claim voucher.

## ATTACHMENT

**Subpoena to Netcirq, LLC**
**In the Matter of Secondary Market Trading by Pre-IPO Shareholders (SF-03983)**
**May 6, 2015**

### INSTRUCTIONS

This subpoena requires the production of certain documents and items, as specified in the section entitled "Production" below. The required documents and information should be produced in accordance with the following requirements:

A.  You must submit all items required to be produced by the subpoena that are in your possession, custody, or subject to your control, regardless of whether the documents are in your possession.

B.  If you claim attorney-client privilege, or any other privilege or protection from production, provide a list of the documents that you claim are privileged or protected, indicating the date prepared, authors, all recipients, the subject matters of the document, and the privilege or protection claimed, sufficiently identifying the documents to permit the staff to determine whether to request an in camera inspection by a federal district court judge.

C.  Produce the entirety of each and every document or item described below, without alteration, deletion, redaction, or obliteration of any information contained therein, even though such information is not specifically requested.

D.  The following rules of construction apply to this subpoena and attachment: (1) the connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the attachment all responses that might otherwise be construed to be outside of its scope; and (2) the use of the singular form of any word includes the plural and vice versa.

### DEFINITIONS

A.      The term "NETCIRQ" means Netcirq, LLC, and all of its parents, U.S. and non-U.S. subsidiaries, divisions, affiliates, predecessors, successors, officers, directors, employees, agents, partners, limited partners, and independent contractors, as well as aliases, code names, trade names, or business names used by, or formerly used by, any of the foregoing.

B.      The terms "DOCUMENT" and "DOCUMENTS" mean any and all records, whether drafts or final versions, originals or annotated or non-identical copies, however and by whomever created, produced, or stored (manually, mechanically, electronically, or otherwise), including, but not limited to, books, papers, files, notes, account statements, confirmations, reports, correspondence, letters, memoranda, electronic files, computer records, computer

programs, e-mail, Internet sites, World Wide Web pages, ledger sheets, telegrams, telexes, telephone bills, messages or logs, handwritten notes, minutes of conversations or meetings, contracts, agreements, calendars, datebooks, diaries, records of billings, checks, receipts, wire transfers, drafts for money, records of payment, data, magnetic tape, tape recordings, disks, diskettes, diskpacks or other electronic media, back-up tapes, microfilm, microfiche, and other storage devices. "DOCUMENT" and "DOCUMENTS" shall also include all "writings," "recordings," and "photographs" as defined by Rule 1001 of the Federal Rules of Evidence and all "books," "documents," and "tangible things" as those terms are used in Rules 26 and 34 of the Federal Rules of Civil Procedure.

C.      The terms "COMMUNICATION" and "COMMUNICATIONS" mean any and all written, oral, telephonic, or other utterances of any nature whatsoever, shared, shown, and/or transferred between and/or among any two or more persons or entities, including, but noted limited to, any statements, inquiries, discussions, conversations, dialogues, correspondence, consultations, negotiations, agreements, understandings, meetings, letters, e-mails, notations, telegrams, advertisements, interviews, and all other documents.

D.      The term "RELATING TO" means constitutes, contains, discusses, embodies, evidences, reflects, identifies, states, refers to, deals with, bears upon, or is in any way pertinent to that subject.

## TIME PERIOD OF PRODUCTION

Unless indicated otherwise, this subpoena and attachment seeks documents from January 1, 2011 to the present.

## PRODUCTION

You are required to produce the following documents:

1. DOCUMENTS sufficient to describe the roles and responsibilities of Kristen McRedmond Wade, Ahmed Abu Deiab, James Nelson, and Christopher Chan with respect to NETCIRQ.

2. For all potential or consummated transactions (including but not limited to any investments, private placements, financings, or loans) involving NETCIRQ and any security of an unregistered issuer purchased from any person or entity other than directly from the issuer:
   a. All DOCUMENTS RELATING TO the transaction;
   b. All COMMUNICATIONS RELATING TO the transaction;
   c. All DOCUMENTS RELATING TO NETCIRQ's role in the transaction; and,
   d. All COMMUNICATIONS with the shareholder(s), investor(s) and/or private company whose securities are involved in the transaction.

3. DOCUMENTS sufficient to identify all investors who have invested in any transaction involving NETCIRQ, including;

    a. Name, address, phone number and accreditation status;

    b. Date and amount of investment;

    c. Any agreements signed with NETCIRQ; and,

    d. Any disclosures or agreements provided to the investor(s).

4. All DOCUMENTS and COMMUNICATIONS RELATING TO any potential or consummated transaction involving NETCIRQ and any of the following activities listed on NETCIRQ's website: creating a "private equity marketplace," "help[ing] shareholder get liquidity by reselling your stock" or "invest[ing] in restricted secondary interests in common/preferred stock."

5. All DOCUMENTS and COMMUNICATIONS RELATING TO any potential or consummated transaction in which NETCIRQ made a direct investment in any security of an unregistered issuer purchased from any person or entity other than directly from the issuer.

6. All DOCUMENTS and COMMUNICATIONS RELATING TO any potential or consummated transaction involving NETCIRQ and any of the following activities listed on Ms. Wade's LinkedIn profile: "creating a secondary market for private equity and venture capital," "reselling private securities and portfolio interests to create a secondary market for private equity" or "find[ing]" buyers for your shares at the best possible valuation."

7. All DOCUMENTS and COMMUNICATIONS RELATING TO any potential or consummated transaction involving NETCIRQ and the system and/or method described in the patent(s) or patent applications entitled "System and Method for Business to Investor Exchange for Raising Capital and For Creating a Secondary Market for Private Equity."

8. All DOCUMENTS RELATING TO the registration of NETCIRQ as a broker-dealer.

**SECURITIES AND EXCHANGE COMMISSION**
Washington, D.C. 20549

**Supplemental Information for Persons Requested to Supply**
**Information Voluntarily or Directed to Supply Information**
**Pursuant to a Commission Subpoena**

**A. False Statements and Documents.**

Section 1001 of Title 18 of the United States Code provides as follows:

> [W]hoever, in any matter within the jurisdiction of the executive, legislative, or judicial branch of the Government of the United States, knowingly and willfully--
> (1) falsifies, conceals, or covers up by any trick, scheme, or device a material fact;
> (2) makes any materially false, fictitious, or fraudulent statement or representation; or
> (3) makes or uses any false writing or document knowing the same to contain any materially false, fictitious, or fraudulent statement or entry;
> shall be fined under this title, imprisoned not more than 5 years . . . or both.

**B. Testimony**

If your testimony is taken, you should be aware of the following:

1. *Record.* Your testimony will be transcribed by a reporter. If you desire to go off the record, please indicate this to the Commission employee taking your testimony, who will determine whether to grant your request. The reporter will not go off the record at your, or your counsel's, direction.

2. *Counsel.* You have the right to be accompanied, represented and advised by counsel of your choice. Your counsel may advise you before, during and after your testimony; question you briefly at the conclusion of your testimony to clarify any of the answers you give during testimony; and make summary notes during your testimony solely for your use. If you are accompanied by counsel, you may consult privately.

If you are not accompanied by counsel, please advise the Commission employee taking your testimony if, during the testimony, you desire to be accompanied, represented and advised by counsel. Your testimony will be adjourned once to afford you the opportunity to arrange to be so accompanied, represented or advised.

You may be represented by counsel who also represents other persons involved in the Commission's investigation. This multiple representation, however, presents a potential conflict of interest if one client's interests are or may be adverse to another's. If you are represented by counsel who also represents other persons involved in the investigation, the Commission will assume that you and counsel have discussed and resolved all issues concerning possible conflicts of interest. The choice of counsel, and the responsibility for that choice, is yours.

3. *Transcript Availability.* Rule 6 of the Commission's Rules Relating to Investigations, 17 CFR 203.6, states:

> A person who has submitted documentary evidence or testimony in a formal investigative proceeding shall be entitled, upon written request, to procure a copy of his documentary evidence or a transcript of his testimony on payment of the appropriate fees: *Provided, however,* That in a nonpublic formal investigative proceeding the Commission may for good cause deny such request. In any event, any witness, upon proper identification, shall have the right to inspect the official transcript of the witness' own testimony.

If you wish to purchase a copy of the transcript of your testimony, the reporter will provide you with a copy of the appropriate form. Persons requested to supply information voluntarily will be allowed the rights provided by this rule.

4. *Perjury.* Section 1621 of Title 18 of the United States Code provides as follows:

> Whoever--
> (1) having taken an oath before a competent tribunal, officer, or person, in any case in which a law of the United States authorizes an oath to be administered, that he will testify, declare, depose, or certify truly, or that any written testimony, declaration, deposition, or certificate by him subscribed, is true, willfully and contrary to such oath states or subscribes any material matter which he does not believe to be true; or

SEC 1662 (09-14)

(2) in any declaration, certificate, verification, or statement under penalty of perjury as permitted under section 1746 of title 28, United States Code, willfully subscribes as true any material matter which he does not believe to be true;

is guilty of perjury and shall, except as otherwise expressly provided by law, be fined under this title or imprisoned not more than five years, or both.

5.   *Fifth Amendment and Voluntary Testimony.* Information you give may be used against you in any federal, state, local or foreign administrative, civil or criminal proceeding brought by the Commission or any other agency.

You may refuse, in accordance with the rights guaranteed to you by the Fifth Amendment to the Constitution of the United States, to give any information that may tend to incriminate you.

If your testimony is not pursuant to subpoena, your appearance to testify is voluntary, you need not answer any question, and you may leave whenever you wish. Your cooperation is, however, appreciated.

6.   *Formal Order Availability.* If the Commission has issued a formal order of investigation, it will be shown to you during your testimony, at your request. If you desire a copy of the formal order, please make your request in writing.

## C. Submissions and Settlements

Rule 5(c) of the Commission's Rules on Informal and Other Procedures, 17 CFR 202.5(c), states:

> Persons who become involved in . . . investigations may, on their own initiative, submit a written statement to the Commission setting forth their interests and position in regard to the subject matter of the investigation. Upon request, the staff, in its discretion, may advise such persons of the general nature of the investigation, including the indicated violations as they pertain to them, and the amount of time that may be available for preparing and submitting a statement prior to the presentation of a staff recommendation to the Commission for the commencement of an administrative or injunction proceeding. Submissions by interested persons should be forwarded to the appropriate Division Director or Regional Director with a copy to the staff members conducting the investigation and should be clearly referenced to the specific investigation to which they relate. In the event a recommendation for the commencement of an enforcement proceeding is presented by the staff, any submissions by interested persons will be forwarded to the Commission in conjunction with the staff memorandum.

The staff of the Commission routinely seeks to introduce submissions made pursuant to Rule 5(c) as evidence in Commission enforcement proceedings, when the staff deems appropriate.

Rule 5(f) of the Commission's Rules on Informal and Other Procedures, 17 CFR 202.5(f), states:

> In the course of the Commission's investigations, civil lawsuits, and administrative proceedings, the staff, with appropriate authorization, may discuss with persons involved the disposition of such matters by consent, by settlement, or in some other manner. It is the policy of the Commission, however, that the disposition of any such matter may not, expressly or impliedly, extend to any criminal charges that have been, or may be, brought against any such person or any recommendation with respect thereto. Accordingly, any person involved in an enforcement matter before the Commission who consents, or agrees to consent, to any judgment or order does so solely for the purpose of resolving the claims against him in that investigative, civil, or administrative matter and not for the purpose of resolving any criminal charges that have been, or might be, brought against him. This policy reflects the fact that neither the Commission nor its staff has the authority or responsibility for instituting, conducting, settling, or otherwise disposing of criminal proceedings. That authority and responsibility are vested in the Attorney General and representatives of the Department of Justice.

## D. Freedom of Information Act

The Freedom of Information Act, 5 U.S.C. 552 (the "FOIA"), generally provides for disclosure of information to the public. Rule 83 of the Commission's Rules on Information and Requests, 17 CFR 200.83, provides a procedure by which a person can make a written request that information submitted to the Commission not be disclosed under the FOIA. That rule states that no determination as to the validity of such a request will be made until a request for disclosure of the information under the FOIA is received. Accordingly, no response to a request that information not be disclosed under the FOIA is necessary or will be given until a request for disclosure under the FOIA is received. If you desire an acknowledgment of receipt of your written request that information not be disclosed under the FOIA, please provide a duplicate request, together with a stamped, self-addressed envelope.

### E. Authority for Solicitation of Information

*Persons Directed to Supply Information Pursuant to Subpoena.* The authority for requiring production of information is set forth in the subpoena. Disclosure of the information to the Commission is mandatory, subject to the valid assertion of any legal right or privilege you might have.

*Persons Requested to Supply Information Voluntarily.* One or more of the following provisions authorizes the Commission to solicit the information requested: Sections 19 and/or 20 of the Securities Act of 1933; Section 21 of the Securities Exchange Act of 1934; Section 321 of the Trust Indenture Act of 1939; Section 42 of the Investment Company Act of 1940; Section 209 of the Investment Advisers Act of 1940; and 17 CFR 202.5. Disclosure of the requested information to the Commission is voluntary on your part.

### F. Effect of Not Supplying Information

*Persons Directed to Supply Information Pursuant to Subpoena.* If you fail to comply with the subpoena, the Commission may seek a court order requiring you to do so. If such an order is obtained and you thereafter fail to supply the information, you may be subject to civil and/or criminal sanctions for contempt of court. In addition, if the subpoena was issued pursuant to the Securities Exchange Act of 1934, the Investment Company Act of 1940, and/or the Investment Advisers Act of 1940, and if you, without just cause, fail or refuse to attend and testify, or to answer any lawful inquiry, or to produce books, papers, correspondence, memoranda, and other records in compliance with the subpoena, you may be found guilty of a misdemeanor and fined not more than $1,000 or imprisoned for a term of not more than one year, or both.

*Persons Requested to Supply Information Voluntarily.* There are no direct sanctions and thus no direct effects for failing to provide all or any part of the requested information.

### G. Principal Uses of Information

The Commission's principal purpose in soliciting the information is to gather facts in order to determine whether any person has violated, is violating, or is about to violate any provision of the federal securities laws or rules for which the Commission has enforcement authority, such as rules of securities exchanges and the rules of the Municipal Securities Rulemaking Board. Facts developed may, however, constitute violations of other laws or rules. Information provided may be used in Commission and other agency enforcement proceedings. Unless the Commission or its staff explicitly agrees to the contrary in writing, you should not assume that the Commission or its staff acquiesces in, accedes to, or concurs or agrees with, any position, condition, request, reservation of right, understanding, or any other statement that purports, or may be deemed, to be or to reflect a limitation upon the Commission's receipt, use, disposition, transfer, or retention, in accordance with applicable law, of information provided.

### H. Routine Uses of Information

The Commission often makes its files available to other governmental agencies, particularly United States Attorneys and state prosecutors. There is a likelihood that information supplied by you will be made available to such agencies where appropriate. Whether or not the Commission makes its files available to other governmental agencies is, in general, a confidential matter between the Commission and such other governmental agencies.

Set forth below is a list of the routine uses which may be made of the information furnished.

1. To appropriate agencies, entities, and persons when (a) it is suspected or confirmed that the security or confidentiality of information in the system of records has been compromised; (b) the SEC has determined that, as a result of the suspected or confirmed compromise, there is a risk of harm to economic or property interests, identity theft or fraud, or harm to the security or integrity of this system or other systems or programs (whether maintained by the SEC or another agency or entity) that rely upon the compromised information; and (c) the disclosure made to such agencies, entities, and persons is reasonably necessary to assist in connection with the SEC's efforts to respond to the suspected or confirmed compromise and prevent, minimize, or remedy such harm.

2. To other federal, state, local, or foreign law enforcement agencies; securities self-regulatory organizations; and foreign financial regulatory authorities to assist in or coordinate regulatory or law enforcement activities with the SEC.

3. To national securities exchanges and national securities associations that are registered with the SEC, the Municipal Securities Rulemaking Board; the Securities Investor Protection Corporation; the Public Company Accounting Oversight Board; the federal banking authorities, including, but not limited to, the Board of Governors of the Federal Reserve System, the Comptroller of the Currency, and the Federal Deposit Insurance Corporation; state securities regulatory agencies or organizations; or regulatory authorities of a foreign government in connection with their regulatory or enforcement responsibilities.

3

4. By SEC personnel for purposes of investigating possible violations of, or to conduct investigations authorized by, the federal securities laws.

5. In any proceeding where the federal securities laws are in issue or in which the Commission, or past or present members of its staff, is a party or otherwise involved in an official capacity.

6. In connection with proceedings by the Commission pursuant to Rule 102(e) of its Rules of Practice, 17 CFR 201.102(e).

7. To a bar association, state accountancy board, or other federal, state, local, or foreign licensing or oversight authority; or professional association or self-regulatory authority to the extent that it performs similar functions (including the Public Company Accounting Oversight Board) for investigations or possible disciplinary action.

8. To a federal, state, local, tribal, foreign, or international agency, if necessary to obtain information relevant to the SEC's decision concerning the hiring or retention of an employee; the issuance of a security clearance; the letting of a contract; or the issuance of a license, grant, or other benefit.

9. To a federal, state, local, tribal, foreign, or international agency in response to its request for information concerning the hiring or retention of an employee; the issuance of a security clearance; the reporting of an investigation of an employee; the letting of a contract; or the issuance of a license, grant, or other benefit by the requesting agency, to the extent that the information is relevant and necessary to the requesting agency's decision on the matter.

10. To produce summary descriptive statistics and analytical studies, as a data source for management information, in support of the function for which the records are collected and maintained or for related personnel management functions or manpower studies; may also be used to respond to general requests for statistical information (without personal identification of individuals) under the Freedom of Information Act.

11. To any trustee, receiver, master, special counsel, or other individual or entity that is appointed by a court of competent jurisdiction, or as a result of an agreement between the parties in connection with litigation or administrative proceedings involving allegations of violations of the federal securities laws (as defined in section 3(a)(47) of the Securities Exchange Act of 1934, 15 U.S.C. 78c(a)(47)) or pursuant to the Commission's Rules of Practice, 17 CFR 201.100 – 900 or the Commission's Rules of Fair Fund and Disgorgement Plans, 17 CFR 201.1100-1106, or otherwise, where such trustee, receiver, master, special counsel, or other individual or entity is specifically designated to perform particular functions with respect to, or as a result of, the pending action or proceeding or in connection with the administration and enforcement by the Commission of the federal securities laws or the Commission's Rules of Practice or the Rules of Fair Fund and Disgorgement Plans.

12. To any persons during the course of any inquiry, examination, or investigation conducted by the SEC's staff, or in connection with civil litigation, if the staff has reason to believe that the person to whom the record is disclosed may have further information about the matters related therein, and those matters appeared to be relevant at the time to the subject matter of the inquiry.

13. To interns, grantees, experts, contractors, and others who have been engaged by the Commission to assist in the performance of a service related to this system of records and who need access to the records for the purpose of assisting the Commission in the efficient administration of its programs, including by performing clerical, stenographic, or data analysis functions, or by reproduction of records by electronic or other means. Recipients of these records shall be required to comply with the requirements of the Privacy Act of 1974, as amended, 5 U.S.C. 552a.

14. In reports published by the Commission pursuant to authority granted in the federal securities laws (as such term is defined in section 3(a)(47) of the Securities Exchange Act of 1934, 15 U.S.C. 78c(a)(47)), which authority shall include, but not be limited to, section 21(a) of the Securities Exchange Act of 1934, 15 U.S.C. 78u(a)).

15. To members of advisory committees that are created by the Commission or by Congress to render advice and recommendations to the Commission or to Congress, to be used solely in connection with their official designated functions.

16. To any person who is or has agreed to be subject to the Commission's Rules of Conduct, 17 CFR 200.735-1 to 200.735-18, and who assists in the investigation by the Commission of possible violations of the federal securities laws (as such term is defined in section 3(a)(47) of the Securities Exchange Act of 1934, 15 U.S.C. 78c(a)(47)), in the preparation or conduct of enforcement actions brought by the Commission for such violations, or otherwise in connection with the Commission's enforcement or regulatory functions under the federal securities laws.

4

17.  To a Congressional office from the record of an individual in response to an inquiry from the Congressional office made at the request of that individual.

18.  To members of Congress, the press, and the public in response to inquiries relating to particular Registrants and their activities, and other matters under the Commission's jurisdiction.

19.  To prepare and publish information relating to violations of the federal securities laws as provided in 15 U.S.C. 78c(a)(47)), as amended.

20.  To respond to subpoenas in any litigation or other proceeding.

21.  To a trustee in bankruptcy.

22.  To any governmental agency, governmental or private collection agent, consumer reporting agency or commercial reporting agency, governmental or private employer of a debtor, or any other person, for collection, including collection by administrative offset, federal salary offset, tax refund offset, or administrative wage garnishment, of amounts owed as a result of Commission civil or administrative proceedings.

\* \* \* \* \*

*Small Business Owners*: The SEC always welcomes comments on how it can better assist small businesses. If you would like more information, or have questions or comments about federal securities regulations as they affect small businesses, please contact the Office of Small Business Policy, in the SEC's Division of Corporation Finance, at 202-551-3460. If you would prefer to comment to someone outside of the SEC, you can contact the Small Business Regulatory Enforcement Ombudsman at http://www.sba.gov/ombudsman or toll free at 888-REG-FAIR. The Ombudsman's office receives comments from small businesses and annually evaluates federal agency enforcement activities for their responsiveness to the special needs of small business.

5

EXHIBIT 10

**Hoffman, Cameron**

| | |
|---|---|
| **From:** | UPS Quantum View <auto-notify@ups.com> |
| **Sent:** | Friday, May 08, 2015 7:18 AM |
| **To:** | Hoffman, Cameron |
| **Subject:** | UPS Delivery Notification, Tracking Number 1ZA375R70192499668 |



\*\*\*Do not reply to this e-mail. UPS and SEC-SAN FRANCISCO will not receive your reply.

**At the request of SEC-SAN FRANCISCO, this notice is to confirm that the following shipment has been delivered.**

**Important Delivery Information**

**Tracking Number:**   1ZA375R70192499668
**Delivery Date / Time:** 08-May-2015 / 10:08 AM

**Delivery Location:** FRONT DESK
**Signed by:** FEDERICO

**Shipment Detail**

**Ship To:**
John P. Corrigan
Corrigan, Baker & Levine, LLC
140 GRAND ST
ROOM 501
WHITE PLAINS
NY
10601
US
**Number of Packages:** 1
**UPS Service:**        NEXT DAY AIR
**Shipment Type:**     Letter
**Reference Number 1:** Hoffmanc@sec.gov
**Reference Number 2:** SF-03983

1

© 2015 United Parcel Service of America, Inc. UPS, the UPS brandmark, and the color brown are trademarks of United Parcel Service of America, Inc. All rights reserved.

All trademarks, trade names, or service marks that appear in connection with UPS's services are the property of their respective owners.

Please do not reply directly to this e-mail. UPS will not receive any reply message.
For more information on UPS's privacy practices, refer to the UPS Privacy Notice.
For questions or comments, visit Contact UPS.

This communication contains proprietary information and may be confidential. If you are not the intended recipient, the reading, copying, disclosure or other use of the contents of this e-mail is strictly prohibited and you are instructed to please delete this e-mail immediately.

**UPS Privacy Notice** | **Contact UPS**

# EXHIBIT 11

**Hoffman, Cameron**

| | |
|---|---|
| **From:** | John Corrigan <jcorrigan@corriganbaker.com> |
| **Sent:** | Friday, May 22, 2015 11:22 AM |
| **To:** | Hoffman, Cameron |
| **Subject:** | Kristen Wade/Netcirq |

Dear Ms. Hoffman,

Please be advised that I no longer represent Kristen Wade on this matter. She is in the midst of engaging local counsel in California to assist her with the action.

I hope you and your family have a nice Memorial Day Weekend.

Regards,

John P. Corrigan
Corrigan, Baker & Levine, LLC
140 Grand Street, Ste. 501
White Plains, NY 10601
(w) 914.468.0191
(c)  914.424.1444
(f)   914.339.0608
www.CBLattorneys.com

1

EXHIBIT 12

## Hoffman, Cameron

| | |
|---|---|
| **From:** | Hoffman, Cameron |
| **Sent:** | Wednesday, July 22, 2015 9:38 AM |
| **To:** | 'kwade@netcirq.com' |
| **Subject:** | RESPONSE REQUIRED: Netcirq - SEC Subpoena |
| **Attachments:** | Netcirq Document Subpoena (5-6-15).pdf |

| | |
|---|---|
| **Importance:** | High |

Ms. Wade,

I still have received no response from you regarding the attached outstanding SEC subpoena.  We are considering our subpoena enforcement options, but would prefer to resolve this amicably.  Please contact me **immediately** to let me know if and when you intend to comply with our lawful subpoena.

Regards,
Cameron

Cameron P. Hoffman
Attorney, Division of Enforcement
U.S. Securities & Exchange Commission
44 Montgomery Street, Suite 2800
San Francisco, CA 94104
(415) 705-2455 (t)
(415) 705-2501 (f)
HoffmanC@sec.gov

---

**From:** Hoffman, Cameron
**Sent:** Wednesday, June 24, 2015 10:02 AM
**To:** kwade@netcirq.com
**Subject:** FW: Netcirq - SEC Subpoena

Ms. Wade,

I still have not heard back from you regarding the outstanding SEC subpoena.  Please contact me, or have your attorney contact me, by 5:00pm this Friday, June 26, 2015, to let me know when we will receive your document production.  If I do not hear back from you by Friday, we will need to consider our options to move this forward.

Regards,
Cameron Hoffman

Cameron P. Hoffman
Attorney, Division of Enforcement
U.S. Securities & Exchange Commission
44 Montgomery Street, Suite 2800
San Francisco, CA 94104
(415) 705-2455 (t)
(415) 705-2501 (f)
HoffmanC@sec.gov

1

**From:** Hoffman, Cameron
**Sent:** Monday, June 08, 2015 9:39 AM
**To:** 'kwade@netcirq.com'
**Subject:** Netcirq - SEC Subpoena

Ms. Wade,

I attempted to reach you by phone, but the Netcirq line was no longer accepting messages.  I am writing to follow up on my outstanding subpoena to Netcirq (attached again for your convenience).  Mr. Corrigan has informed me that he no longer represents you in this matter.  As you know, we first spoke nearly two months ago, and the subpoena was issued over a month ago.  You have missed the production deadline and have not been in contact regarding when we can expect to receive your document production.  If you have retained different counsel, please have them contact me immediately.  Otherwise, please let me know when I can expect Netcirq's document production.

Regards,

Cameron P. Hoffman
Attorney, Division of Enforcement
U.S. Securities & Exchange Commission
44 Montgomery Street, Suite 2800
San Francisco, CA 94104
(415) 705-2455 (t)
(415) 705-2501 (f)
HoffmanC@sec.gov



**UNITED STATES**
**SECURITIES AND EXCHANGE COMMISSION**
**SAN FRANCISCO REGIONAL OFFICE**
**44 Montgomery Street**
SUITE 2800
SAN FRANCISCO, CALIFORNIA 94104

DIRECT DIAL: (415) 705-2455
EMAIL: HOFFMANC@SEC.GOV

May 6, 2015

**EMAIL AND OVERNIGHT DELIVERY**

Netcirq, LLC
c/o John P. Corrigan
Corrigan, Baker & Levine, LLC
140 Grand Street, Ste. 501
White Plains, NY 10601

Re:   In the Matter of Secondary Market Trading by Pre-IPO
      Shareholders (SF-03983)

Dear Mr. Corrigan:

As you know, the staff of the Securities and Exchange Commission is conducting an investigation in the matter identified above. The enclosed subpoena has been issued to Netcirq, LLC (the "Company") as part of this investigation. **The subpoena requires the Company to give us documents.**

Please read the subpoena and this letter carefully. This letter answers some questions the Company may have about the subpoena. You should also read the enclosed SEC Form 1662. The Company must comply with the subpoena. The Company may be subject to a fine and imprisonment if it does not.

**Producing Documents**

*What materials do I have to produce?*

The subpoena requires the Company to give us the documents described in the attachment to the subpoena. **The Company must provide these documents by May 20, 2015.** The attachment to the subpoena defines some terms (such as "document") before listing what the Company must provide.

Please note that if copies of a document differ in any way, they are considered separate documents and the Company must send each one. For example, if the Company has two copies of the same letter, but only one of them has handwritten notes on it, the Company must send both the clean copy and the one with notes.

If the Company prefers, it may send us photocopies of the originals. The Commission cannot reimburse the Company for the copying costs. The copies must be identical to the

Netcirq, LLC
May 6, 2015
Page 2

originals, including even faint marks or print. If the Company chooses to send copies, the Company **must** keep the originals in a safe place. The staff will accept the copies for now, but may require the Company to produce the originals later.

*Do I need to send anything else?*

The Company should enclose a list briefly describing each item it sends. The list should state which paragraph(s) in the subpoena attachment each item responds to. A copy of the subpoena should be included with the documents that are produced.

Passwords for documents, files, compressed archives, and encrypted media should be provided separately either via email addressed to ENF-CPU@sec.gov, or in a separate cover letter mailed separately from the data.

Please include a cover letter stating whether the Company believes it has met its obligations under the subpoena by searching carefully and thoroughly for everything called for by the subpoena, and sending it all to us.

*What if I do not send everything described in the attachment to the subpoena?*

The subpoena requires the Company to send all the materials described in it. If, for any reason—including a claim of attorney-client privilege—the Company does not produce something called for by the subpoena, the Company should submit a list of what it is not producing. The list should describe each item separately, noting:

- its author(s);

- its date;

- its subject matter;

- the name of the person who has the item now, or the last person known to have it;

- the names of everyone who ever had the item or a copy of it, and the names of everyone who was told the item's contents; and

- the reason the Company did not produce the item.

If the Company withholds anything on the basis of a claim of attorney-client privilege or attorney work product protection, it should also identify the attorney and client involved.

*Where should I send the materials?*

Please deliver the production, along with any passwords for encrypted media, to **both** of the following **two** recipients:

Cameron P. Hoffman
U.S. Securities and Exchange Commission
San Francisco Regional Office
44 Montgomery Street, Suite 2800
San Francisco, CA 94104

Netcirq, LLC
May 6, 2015
Page 3

ENF-CPU
U.S. Securities and Exchange Commission
100 F St., N.E., Mailstop 5973
Washington, DC 20549-5973

For smaller electronic productions under 10MB in size, the materials may be emailed to the following email address: ENF-CPU@sec.gov.

## Other Important Information

*May I have a lawyer help me respond to the subpoena?*

Yes. The Company has the right to consult with and be represented by its own lawyer in this matter. We cannot give you legal advice.

*What will the Commission do with the materials I send and the testimony I provide?*

The enclosed SEC Form 1662 includes a List of Routine Uses of information provided to the Commission. This form has other important information for you. Please read it carefully.

*Has the Commission determined that anyone has done anything wrong?*

This investigation is a non-public, fact-finding inquiry. We are trying to determine whether there have been any violations of the federal securities laws. The investigation and the subpoena do not mean that we have concluded that the Company or anyone else has broken the law. Also, the investigation does not mean that we have a negative opinion of any person, entity or security.

*Important Policy Concerning Settlements*

Please note that, in any matter in which enforcement action is ultimately deemed to be warranted, the Division of Enforcement will not recommend any settlement to the Commission unless the party wishing to settle certifies, under penalty of perjury, that all documents responsive to Commission subpoenas and formal and informal document requests in this matter have been produced.

*I have read this letter, the subpoena, and the SEC Form 1662, but I still have questions. What should I do?*

If the Company has any other questions, please contact me at (415) 705-2455.

Sincerely,

Cameron P. Hoffman
Attorney, Division of Enforcement

Enclosure:   Subpoena
             SEC Form 1662



# SUBPOENA

# UNITED STATES OF AMERICA
## SECURITIES AND EXCHANGE COMMISSION

### In the Matter of Secondary Trading by Pre-IPO Shareholders (SF-03983)

To:     Netcirq, LLC
        c/o John P. Corrigan
        Corrigan, Baker & Levine, LLC
        140 Grand Street, Ste. 501
        White Plains, NY 10601

☒     **YOU MUST PRODUCE** everything specified in the Attachment to this subpoena to officers of the Securities and Exchange Commission, at the place and by the date and time specified below:

44 Montgomery Street, Suite 2800, San Francisco, CA 94104, **May 20, 2015, 5:00 p.m.**

☐     **YOU MUST TESTIFY** before officers of the Securities and Exchange Commission, at the place, date and time specified below:

**FEDERAL LAW REQUIRES YOU TO COMPLY WITH THIS SUBPOENA.**
        Failure to comply may subject you to a fine and/or imprisonment.

By:     _____          Date:  May 6, 2015
        Cameron P. Hoffman
        U.S. Securities and Exchange Commission
        44 Montgomery Street, 28th Floor
        San Francisco, CA 94104
        (415) 705-2455

I am an officer of the Securities and Exchange Commission authorized to issue subpoenas in this matter. The Securities and Exchange Commission has issued a Formal Order authorizing this investigation under Section 21(a) of the Securities Exchange Act of 1934.

NOTICE TO WITNESS:      If you claim a witness fee or mileage, submit this subpoena with the claim voucher.

**ATTACHMENT**

**Subpoena to Netcirq, LLC**
**In the Matter of Secondary Market Trading by Pre-IPO Shareholders (SF-03983)**
**May 6, 2015**

**INSTRUCTIONS**

This subpoena requires the production of certain documents and items, as specified in the section entitled "Production" below.  The required documents and information should be produced in accordance with the following requirements:

A.  You must submit all items required to be produced by the subpoena that are in your possession, custody, or subject to your control, regardless of whether the documents are in your possession.

B.  If you claim attorney-client privilege, or any other privilege or protection from production, provide a list of the documents that you claim are privileged or protected, indicating the date prepared, authors, all recipients, the subject matters of the document, and the privilege or protection claimed, sufficiently identifying the documents to permit the staff to determine whether to request an in camera inspection by a federal district court judge.

C.  Produce the entirety of each and every document or item described below, without alteration, deletion, redaction, or obliteration of any information contained therein, even though such information is not specifically requested.

D.  The following rules of construction apply to this subpoena and attachment: (1) the connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the attachment all responses that might otherwise be construed to be outside of its scope; and (2) the use of the singular form of any word includes the plural and vice versa.

**DEFINITIONS**

A.  The term "NETCIRQ" means Netcirq, LLC, and all of its parents, U.S. and non-U.S. subsidiaries, divisions, affiliates, predecessors, successors, officers, directors, employees, agents, partners, limited partners, and independent contractors, as well as aliases, code names, trade names, or business names used by, or formerly used by, any of the foregoing.

B.  The terms "DOCUMENT" and "DOCUMENTS" mean any and all records, whether drafts or final versions, originals or annotated or non-identical copies, however and by whomever created, produced, or stored (manually, mechanically, electronically, or otherwise), including, but not limited to, books, papers, files, notes, account statements, confirmations, reports, correspondence, letters, memoranda, electronic files, computer records, computer

programs, e-mail, Internet sites, World Wide Web pages, ledger sheets, telegrams, telexes, telephone bills, messages or logs, handwritten notes, minutes of conversations or meetings, contracts, agreements, calendars, datebooks, diaries, records of billings, checks, receipts, wire transfers, drafts for money, records of payment, data, magnetic tape, tape recordings, disks, diskettes, diskpacks or other electronic media, back-up tapes, microfilm, microfiche, and other storage devices. "DOCUMENT" and "DOCUMENTS" shall also include all "writings," "recordings," and "photographs" as defined by Rule 1001 of the Federal Rules of Evidence and all "books," "documents," and "tangible things" as those terms are used in Rules 26 and 34 of the Federal Rules of Civil Procedure.

      C.     The terms "COMMUNICATION" and "COMMUNICATIONS" mean any and all written, oral, telephonic, or other utterances of any nature whatsoever, shared, shown, and/or transferred between and/or among any two or more persons or entities, including, but noted limited to, any statements, inquiries, discussions, conversations, dialogues, correspondence, consultations, negotiations, agreements, understandings, meetings, letters, e-mails, notations, telegrams, advertisements, interviews, and all other documents.

      D.     The term "RELATING TO" means constitutes, contains, discusses, embodies, evidences, reflects, identifies, states, refers to, deals with, bears upon, or is in any way pertinent to that subject.

## TIME PERIOD OF PRODUCTION

Unless indicated otherwise, this subpoena and attachment seeks documents from January 1, 2011 to the present.

## PRODUCTION

You are required to produce the following documents:

1. DOCUMENTS sufficient to describe the roles and responsibilities of Kristen McRedmond Wade, Ahmed Abu Deiab, James Nelson, and Christopher Chan with respect to NETCIRQ.

2. For all potential or consummated transactions (including but not limited to any investments, private placements, financings, or loans) involving NETCIRQ and any security of an unregistered issuer purchased from any person or entity other than directly from the issuer:
   a. All DOCUMENTS RELATING TO the transaction;
   b. All COMMUNICATIONS RELATING TO the transaction;
   c. All DOCUMENTS RELATING TO NETCIRQ's role in the transaction; and,
   d. All COMMUNICATIONS with the shareholder(s), investor(s) and/or private company whose securities are involved in the transaction.

3. DOCUMENTS sufficient to identify all investors who have invested in any transaction involving NETCIRQ, including;
   a. Name, address, phone number and accreditation status;
   b. Date and amount of investment;
   c. Any agreements signed with NETCIRQ; and,
   d. Any disclosures or agreements provided to the investor(s).

4. All DOCUMENTS and COMMUNICATIONS RELATING TO any potential or consummated transaction involving NETCIRQ and any of the following activities listed on NETCIRQ's website: creating a "private equity marketplace," "help[ing] shareholder get liquidity by reselling your stock" or "invest[ing] in restricted secondary interests in common/preferred stock."

5. All DOCUMENTS and COMMUNICATIONS RELATING TO any potential or consummated transaction in which NETCIRQ made a direct investment in any security of an unregistered issuer purchased from any person or entity other than directly from the issuer.

6. All DOCUMENTS and COMMUNICATIONS RELATING TO any potential or consummated transaction involving NETCIRQ and any of the following activities listed on Ms. Wade's LinkedIn profile: "creating a secondary market for private equity and venture capital," "reselling private securities and portfolio interests to create a secondary market for private equity" or "find[ing]" buyers for your shares at the best possible valuation."

7. All DOCUMENTS and COMMUNICATIONS RELATING TO any potential or consummated transaction involving NETCIRQ and the system and/or method described in the patent(s) or patent applications entitled "System and Method for Business to Investor Exchange for Raising Capital and For Creating a Secondary Market for Private Equity."

8. All DOCUMENTS RELATING TO the registration of NETCIRQ as a broker-dealer.

**SECURITIES AND EXCHANGE COMMISSION**
**Washington, D.C. 20549**

**Supplemental Information for Persons Requested to Supply**
**Information Voluntarily or Directed to Supply Information**
**Pursuant to a Commission Subpoena**

**A. False Statements and Documents.**

Section 1001 of Title 18 of the United States Code provides as follows:

> [W]hoever, in any matter within the jurisdiction of the executive, legislative, or judicial branch of the Government of the United States, knowingly and willfully--
> (1) falsifies, conceals, or covers up by any trick, scheme, or device a material fact;
> (2) makes any materially false, fictitious, or fraudulent statement or representation; or
> (3) makes or uses any false writing or document knowing the same to contain any materially false, fictitious, or fraudulent statement or entry;
> shall be fined under this title, imprisoned not more than 5 years . . . or both.

**B. Testimony**

If your testimony is taken, you should be aware of the following:

1. *Record.* Your testimony will be transcribed by a reporter. If you desire to go off the record, please indicate this to the Commission employee taking your testimony, who will determine whether to grant your request. The reporter will not go off the record at your, or your counsel's, direction.

2. *Counsel.* You have the right to be accompanied, represented and advised by counsel of your choice. Your counsel may advise you before, during and after your testimony; question you briefly at the conclusion of your testimony to clarify any of the answers you give during testimony; and make summary notes during your testimony solely for your use. If you are accompanied by counsel, you may consult privately.

If you are not accompanied by counsel, please advise the Commission employee taking your testimony if, during the testimony, you desire to be accompanied, represented and advised by counsel. Your testimony will be adjourned once to afford you the opportunity to arrange to be so accompanied, represented or advised.

You may be represented by counsel who also represents other persons involved in the Commission's investigation. This multiple representation, however, presents a potential conflict of interest if one client's interests are or may be adverse to another's. If you are represented by counsel who also represents other persons involved in the investigation, the Commission will assume that you and counsel have discussed and resolved all issues concerning possible conflicts of interest. The choice of counsel, and the responsibility for that choice, is yours.

3. *Transcript Availability.* Rule 6 of the Commission's Rules Relating to Investigations, 17 CFR 203.6, states:

> A person who has submitted documentary evidence or testimony in a formal investigative proceeding shall be entitled, upon written request, to procure a copy of his documentary evidence or a transcript of his testimony on payment of the appropriate fees: *Provided, however,* That in a nonpublic formal investigative proceeding the Commission may for good cause deny such request. In any event, any witness, upon proper identification, shall have the right to inspect the official transcript of the witness' own testimony.

If you wish to purchase a copy of the transcript of your testimony, the reporter will provide you with a copy of the appropriate form. Persons requested to supply information voluntarily will be allowed the rights provided by this rule.

4. *Perjury.* Section 1621 of Title 18 of the United States Code provides as follows:

> Whoever--
> (1) having taken an oath before a competent tribunal, officer, or person, in any case in which a law of the United States authorizes an oath to be administered, that he will testify, declare, depose, or certify truly, or that any written testimony, declaration, deposition, or certificate by him subscribed, is true, willfully and contrary to such oath states or subscribes any material matter which he does not believe to be true; or

SEC 1662 (09-14)

> (2) in any declaration, certificate, verification, or statement under penalty of perjury as permitted under section 1746 of title 28, United States Code, willfully subscribes as true any material matter which he does not believe to be true;
>
> is guilty of perjury and shall, except as otherwise expressly provided by law, be fined under this title or imprisoned not more than five years, or both.

5.   *Fifth Amendment and Voluntary Testimony.* Information you give may be used against you in any federal, state, local or foreign administrative, civil or criminal proceeding brought by the Commission or any other agency.

You may refuse, in accordance with the rights guaranteed to you by the Fifth Amendment to the Constitution of the United States, to give any information that may tend to incriminate you.

If your testimony is not pursuant to subpoena, your appearance to testify is voluntary, you need not answer any question, and you may leave whenever you wish. Your cooperation is, however, appreciated.

6.   *Formal Order Availability.* If the Commission has issued a formal order of investigation, it will be shown to you during your testimony, at your request. If you desire a copy of the formal order, please make your request in writing.

## C. Submissions and Settlements

Rule 5(c) of the Commission's Rules on Informal and Other Procedures, 17 CFR 202.5(c), states:

> Persons who become involved in . . . investigations may, on their own initiative, submit a written statement to the Commission setting forth their interests and position in regard to the subject matter of the investigation. Upon request, the staff, in its discretion, may advise such persons of the general nature of the investigation, including the indicated violations as they pertain to them, and the amount of time that may be available for preparing and submitting a statement prior to the presentation of a staff recommendation to the Commission for the commencement of an administrative or injunction proceeding. Submissions by interested persons should be forwarded to the appropriate Division Director or Regional Director with a copy to the staff members conducting the investigation and should be clearly referenced to the specific investigation to which they relate. In the event a recommendation for the commencement of an enforcement proceeding is presented by the staff, any submissions by interested persons will be forwarded to the Commission in conjunction with the staff memorandum.

The staff of the Commission routinely seeks to introduce submissions made pursuant to Rule 5(c) as evidence in Commission enforcement proceedings, when the staff deems appropriate.

Rule 5(f) of the Commission's Rules on Informal and Other Procedures, 17 CFR 202.5(f), states:

> In the course of the Commission's investigations, civil lawsuits, and administrative proceedings, the staff, with appropriate authorization, may discuss with persons involved in such matters the disposition of such matters by consent, by settlement, or in some other manner. It is the policy of the Commission, however, that the disposition of any such matter may not, expressly or impliedly, extend to any criminal charges that have been, or may be, brought against any such person or any recommendation with respect thereto. Accordingly, any person involved in an enforcement matter before the Commission who consents, or agrees to consent, to any judgment or order does so solely for the purpose of resolving the claims against him in that investigative, civil, or administrative matter and not for the purpose of resolving any criminal charges that have been, or might be, brought against him. This policy reflects the fact that neither the Commission nor its staff has the authority or responsibility for instituting, conducting, settling, or otherwise disposing of criminal proceedings. That authority and responsibility are vested in the Attorney General and representatives of the Department of Justice.

## D. Freedom of Information Act

The Freedom of Information Act, 5 U.S.C. 552 (the "FOIA"), generally provides for disclosure of information to the public. Rule 83 of the Commission's Rules on Information and Requests, 17 CFR 200.83, provides a procedure by which a person can make a written request that information submitted to the Commission not be disclosed under the FOIA. That rule states that no determination as to the validity of such a request will be made until a request for disclosure of the information under the FOIA is received. Accordingly, no response to a request that information not be disclosed under the FOIA is necessary or will be given until a request for disclosure under the FOIA is received. If you desire an acknowledgment of receipt of your written request that information not be disclosed under the FOIA, please provide a duplicate request, together with a stamped, self-addressed envelope.

**E. Authority for Solicitation of Information**

*Persons Directed to Supply Information Pursuant to Subpoena.* The authority for requiring production of information is set forth in the subpoena. Disclosure of the information to the Commission is mandatory, subject to the valid assertion of any legal right or privilege you might have.

*Persons Requested to Supply Information Voluntarily.* One or more of the following provisions authorizes the Commission to solicit the information requested: Sections 19 and/or 20 of the Securities Act of 1933; Section 21 of the Securities Exchange Act of 1934; Section 321 of the Trust Indenture Act of 1939; Section 42 of the Investment Company Act of 1940; Section 209 of the Investment Advisers Act of 1940; and 17 CFR 202.5. Disclosure of the requested information to the Commission is voluntary on your part.

**F. Effect of Not Supplying Information**

*Persons Directed to Supply Information Pursuant to Subpoena.* If you fail to comply with the subpoena, the Commission may seek a court order requiring you to do so. If such an order is obtained and you thereafter fail to supply the information, you may be subject to civil and/or criminal sanctions for contempt of court. In addition, if the subpoena was issued pursuant to the Securities Exchange Act of 1934, the Investment Company Act of 1940, and/or the Investment Advisers Act of 1940, and if you, without just cause, fail or refuse to attend and testify, or to answer any lawful inquiry, or to produce books, papers, correspondence, memoranda, and other records in compliance with the subpoena, you may be found guilty of a misdemeanor and fined not more than $1,000 or imprisoned for a term of not more than one year, or both.

*Persons Requested to Supply Information Voluntarily.* There are no direct sanctions and thus no direct effects for failing to provide all or any part of the requested information.

**G. Principal Uses of Information**

The Commission's principal purpose in soliciting the information is to gather facts in order to determine whether any person has violated, is violating, or is about to violate any provision of the federal securities laws or rules for which the Commission has enforcement authority, such as rules of securities exchanges and the rules of the Municipal Securities Rulemaking Board. Facts developed may, however, constitute violations of other laws or rules. Information provided may be used in Commission and other agency enforcement proceedings. Unless the Commission or its staff explicitly agrees to the contrary in writing, you should not assume that the Commission or its staff acquiesces in, accedes to, or concurs or agrees with, any position, condition, request, reservation of right, understanding, or any other statement that purports, or may be deemed, to be or to reflect a limitation upon the Commission's receipt, use, disposition, transfer, or retention, in accordance with applicable law, of information provided.

**H. Routine Uses of Information**

The Commission often makes its files available to other governmental agencies, particularly United States Attorneys and state prosecutors. There is a likelihood that information supplied by you will be made available to such agencies where appropriate. Whether or not the Commission makes its files available to other governmental agencies is, in general, a confidential matter between the Commission and such other governmental agencies.

Set forth below is a list of the routine uses which may be made of the information furnished.

1. To appropriate agencies, entities, and persons when (a) it is suspected or confirmed that the security or confidentiality of information in the system of records has been compromised; (b) the SEC has determined that, as a result of the suspected or confirmed compromise, there is a risk of harm to economic or property interests, identity theft or fraud, or harm to the security or integrity of this system or other systems or programs (whether maintained by the SEC or another agency or entity) that rely upon the compromised information; and (c) the disclosure made to such agencies, entities, and persons is reasonably necessary to assist in connection with the SEC's efforts to respond to the suspected or confirmed compromise and prevent, minimize, or remedy such harm.

2. To other federal, state, local, or foreign law enforcement agencies; securities self-regulatory organizations; and foreign financial regulatory authorities to assist in or coordinate regulatory or law enforcement activities with the SEC.

3. To national securities exchanges and national securities associations that are registered with the SEC, the Municipal Securities Rulemaking Board; the Securities Investor Protection Corporation; the Public Company Accounting Oversight Board; the federal banking authorities, including, but not limited to, the Board of Governors of the Federal Reserve System, the Comptroller of the Currency, and the Federal Deposit Insurance Corporation; state securities regulatory agencies or organizations; or regulatory authorities of a foreign government in connection with their regulatory or enforcement responsibilities.

4. By SEC personnel for purposes of investigating possible violations of, or to conduct investigations authorized by, the federal securities laws.

5. In any proceeding where the federal securities laws are in issue or in which the Commission, or past or present members of its staff, is a party or otherwise involved in an official capacity.

6. In connection with proceedings by the Commission pursuant to Rule 102(e) of its Rules of Practice, 17 CFR 201.102(e).

7. To a bar association, state accountancy board, or other federal, state, local, or foreign licensing or oversight authority; or professional association or self-regulatory authority to the extent that it performs similar functions (including the Public Company Accounting Oversight Board) for investigations or possible disciplinary action.

8. To a federal, state, local, tribal, foreign, or international agency, if necessary to obtain information relevant to the SEC's decision concerning the hiring or retention of an employee; the issuance of a security clearance; the letting of a contract; or the issuance of a license, grant, or other benefit.

9. To a federal, state, local, tribal, foreign, or international agency in response to its request for information concerning the hiring or retention of an employee; the issuance of a security clearance; the reporting of an investigation of an employee; the letting of a contract; or the issuance of a license, grant, or other benefit by the requesting agency, to the extent that the information is relevant and necessary to the requesting agency's decision on the matter.

10. To produce summary descriptive statistics and analytical studies, as a data source for management information, in support of the function for which the records are collected and maintained or for related personnel management functions or manpower studies; may also be used to respond to general requests for statistical information (without personal identification of individuals) under the Freedom of Information Act.

11. To any trustee, receiver, master, special counsel, or other individual or entity that is appointed by a court of competent jurisdiction, or as a result of an agreement between the parties in connection with litigation or administrative proceedings involving allegations of violations of the federal securities laws (as defined in section 3(a)(47) of the Securities Exchange Act of 1934, 15 U.S.C. 78c(a)(47)) or pursuant to the Commission's Rules of Practice, 17 CFR 201.100 – 900 or the Commission's Rules of Fair Fund and Disgorgement Plans, 17 CFR 201.1100-1106, or otherwise, where such trustee, receiver, master, special counsel, or other individual or entity is specifically designated to perform particular functions with respect to, or as a result of, the pending action or proceeding or in connection with the administration and enforcement by the Commission of the federal securities laws or the Commission's Rules of Practice or the Rules of Fair Fund and Disgorgement Plans.

12. To any persons during the course of any inquiry, examination, or investigation conducted by the SEC's staff, or in connection with civil litigation, if the staff has reason to believe that the person to whom the record is disclosed may have further information about the matters related therein, and those matters appeared to be relevant at the time to the subject matter of the inquiry.

13. To interns, grantees, experts, contractors, and others who have been engaged by the Commission to assist in the performance of a service related to this system of records and who need access to the records for the purpose of assisting the Commission in the efficient administration of its programs, including by performing clerical, stenographic, or data analysis functions, or by reproduction of records by electronic or other means. Recipients of these records shall be required to comply with the requirements of the Privacy Act of 1974, as amended, 5 U.S.C. 552a.

14. In reports published by the Commission pursuant to authority granted in the federal securities laws (as such term is defined in section 3(a)(47) of the Securities Exchange Act of 1934, 15 U.S.C. 78c(a)(47)), which authority shall include, but not be limited to, section 21(a) of the Securities Exchange Act of 1934, 15 U.S.C. 78u(a)).

15. To members of advisory committees that are created by the Commission or by Congress to render advice and recommendations to the Commission or to Congress, to be used solely in connection with their official designated functions.

16. To any person who is or has agreed to be subject to the Commission's Rules of Conduct, 17 CFR 200.735-1 to 200.735-18, and who assists in the investigation by the Commission of possible violations of the federal securities laws (as such term is defined in section 3(a)(47) of the Securities Exchange Act of 1934, 15 U.S.C. 78c(a)(47)), in the preparation or conduct of enforcement actions brought by the Commission for such violations, or otherwise in connection with the Commission's enforcement or regulatory functions under the federal securities laws.

17.  To a Congressional office from the record of an individual in response to an inquiry from the Congressional office made at the request of that individual.

18.  To members of Congress, the press, and the public in response to inquiries relating to particular Registrants and their activities, and other matters under the Commission's jurisdiction.

19.  To prepare and publish information relating to violations of the federal securities laws as provided in 15 U.S.C. 78c(a)(47)), as amended.

20.  To respond to subpoenas in any litigation or other proceeding.

21.  To a trustee in bankruptcy.

22.  To any governmental agency, governmental or private collection agent, consumer reporting agency or commercial reporting agency, governmental or private employer of a debtor, or any other person, for collection, including collection by administrative offset, federal salary offset, tax refund offset, or administrative wage garnishment, of amounts owed as a result of Commission civil or administrative proceedings.

\* \* \* \* \*

*Small Business Owners*: The SEC always welcomes comments on how it can better assist small businesses. If you would like more information, or have questions or comments about federal securities regulations as they affect small businesses, please contact the Office of Small Business Policy, in the SEC's Division of Corporation Finance, at 202-551-3460. If you would prefer to comment to someone outside of the SEC, you can contact the Small Business Regulatory Enforcement Ombudsman at http://www.sba.gov/ombudsman or toll free at 888-REG-FAIR. The Ombudsman's office receives comments from small businesses and annually evaluates federal agency enforcement activities for their responsiveness to the special needs of small business.

# EXHIBIT 13



**UNITED STATES
SECURITIES AND EXCHANGE COMMISSION
SAN FRANCISCO REGIONAL OFFICE**
44 MONTGOMERY STREET
SUITE 2800
SAN FRANCISCO, CALIFORNIA 94104

DIRECT DIAL: 415-705-2455
EMAIL: HOFFMANC@SEC.GOV

July 22, 2015

**Via UPS – Signature Required**

Kristin McRedmond Wade
NetCirq, LLC
301 Mission Street, 27th Floor
San Francisco, CA 94105

Re:   In the Matter of Secondary Market Trading by Pre-IPO
        Shareholders, File No. MSF-03983

Dear Ms. Wade:

As you are aware, the United States Securities and Exchange Commission (the "Commission") issued a document preservation request to NetCirc, LLC, on April 7, 2015, and served a lawful subpoena for documents on NetCirq, LLC, on May 6, 2015. Pursuant to the subpoena, responsive documents were due to the Commission by May 20, 2015.

Based on the information you and your former counsel John Corrigan each separately relayed to me in telephone conversations on April 15, 2015 and May 15, 2015, respectively, it is my understanding that documents responsive to the Commission's subpoena do in fact exist and are in your possession, custody and control.

However, NetCirq, LLC, has failed to comply with its production obligations, and has produced no documents in response to the Commission's subpoena. Moreover, I have attempted to contact you numerous times by phone and email to discuss the outstanding document subpoena, but have received no response to my communications. Accordingly, at this point the Commission has no choice but to consider its options to compel production of the documents responsive to its subpoena. We would, however, prefer to resolve this matter amicably, if possible. **Please contact me <u>immediately</u> (and no later than July 31, 2015) to let me know if and when NetCirq, LLC, intends to comply with the Commission's lawful subpoena.**

Kristin McRedmond Wade
NetCirq, LLC
July 22, 2015
Page 2


For your convenience, I am including with this letter copies of:

- An email from John Corrigan dated May 6, 2015 confirming NetCirq, LLC's receipt of the Commission's April 7, 2015 Voluntary Preservation Request to NetCirq, LLC, and acknowledging NetCirq, LLC's compliance with its preservation obligations;
- My email to John Corrigan dated May 6, 2015 attaching the Commission's May 6, 2015 Document Subpoena to NetCirq, LLC;
- UPS Confirmation of delivery of the Commission's May 6, 2015 Document Subpoena to the offices of Mr. Corrigan on May 8, 2015;
- An email from John Corrigan dated May 22, 2015 regarding termination of his representation of you and NetCirq, LLC in this matter; and,
- My emails to you dated June 8, 2015, June 24, 2015 and July 22, 2015 attaching the Commission's May 6, 2015 Document Subpoena to NetCirq, LLC, and reflecting my attempts to contact you by both phone and email.

Sincerely,

Cameron P. Hoffman
Division of Enforcement


Enclosures

**Hoffman, Cameron**

| | |
|---|---|
| **From:** | John Corrigan <jcorrigan@corriganbaker.com> |
| **Sent:** | Wednesday, May 06, 2015 8:39 AM |
| **To:** | Hoffman, Cameron |
| **Subject:** | Netcirq, LLC |
| **Attachments:** | 4-7-15 letter to NetCirq.pdf |

Dear Attorney Hoffman,

I am Kristen Wade's attorney (and Uncle) and am following up on your letter of April 7, 2015 (attached).  I wanted to see what your calendar looks like next week for a time to have a discussion about your expectations and how Kristen can of course cooperate with the SEC's current investigation with the least possible disruption of her business which is essentially a one-band band and not a large company with unlimited resources.

My schedule is quite open next week (especially Wed-Fri) so please let me know if you have any time to talk.  If not good for you next week then please propose some dates and times the following week which are good for you.

Also, thank you for your patience as I just moved back here from FL to NY in middle of April so have been running around trying to keep clients happy while finding a new home and welcoming a new partner as of 4/30!  Kristen also just got married so we have been like two ships passing in the night leaving VM's to each other trying to connect.  Regardless, I can assure you that first and foremost she has not touched any of her records and understands the spoliation implication issue and concerns of the govt. in ensuring potential evidence is protected.

Regards,

John P. Corrigan
Corrigan, Baker & Levine, LLC
140 Grand Street, Ste. 501
White Plains, NY 10601
(w) 914.468.0191
(c) 914.424.1444
(f)  914.339.0608
www.corriganbaker.com

1



**UNITED STATES**
**SECURITIES AND EXCHANGE COMMISSION**
**SAN FRANCISCO REGIONAL OFFICE**
44 MONTGOMERY STREET
SUITE 2800
SAN FRANCISCO, CALIFORNIA 94104

DIRECT DIAL: 415-705-2455
EMAIL: HOFFMANC@SEC.GOV

April 7, 2015

**Via Overnight Delivery &**
**Email to: kwade@netcirq.com**

NetCirq, LLC
c/o Kristin McRedmond Wade
301 Mission Street, 27th Floor
San Francisco, CA 94105

Re:    In the Matter of Secondary Market Trading by Pre-IPO
       Shareholders, File No. MSF-03983

Dear Ms. Wade:

**We believe you and/or NetCirq, LLC, may possess documents and data that are**
**relevant to an ongoing investigation being conducted by the staff of the United States**
**Securities and Exchange Commission. Accordingly, we hereby provide notice that**
**such evidence should be reasonably preserved and retained until further notice.**
**Failure to do so could give rise to civil and criminal liability.**

The Commission considers potentially relevant documents to include those created on
or after January 1, 2013 that relates or refers to the following transactions/topics:

   (1)    Any transaction relating to any security or any interest, in whatever
          form, of any security of an unregistered issuer;
   (2)    Any transaction relating to any fund or other investment vehicle
          intended to acquire any security or any interest, in whatever form,
          or any security of any unregistered issuer;
   (3)    Any transaction related to the following activities listed on your
          company website: create a "private equity marketplace," "help
          shareholder get liquidity by reselling your stock" or "invest in
          restricted secondary interests in common/preferred stock."
   (4)    Any transaction related to the following activities listed on your
          company LinkedIn profile: "creating a secondary market for private
          equity and venture capital," "reselling private securities and
          portfolio interests to create a secondary market for private equity"
          or "find[ing]" buyers for your shares at the best possible valuation."
   (4)    Any patent(s) or applications for a "System and Method for
          Business to Investor Exchange for Raising Capital and For Creating

NctCirq, LLC
April 7, 2015
Page 2

a Secondary Market for Private Equity" and any transaction(s) effected over any such system; and,

(4)     Any communications related to the above topics.

Such documents include both "hard copy" versions and electronically-stored information in your possession, custody or control, including text files, data compilations, word processing documents, spreadsheets, e-mail, voicemail, data bases, calendars and scheduling information, logs, file fragments and backup files, letters, instant messages, memoranda, notes, drawings, designs, correspondence or communication of any kind. Evidence that is stored electronically may be maintained on shared network files, computer hard drives, servers, DVDs, CD-ROMs, flash drives, thumb drives, laptops, digital recorders, netbooks, PDAs, smartphones, or other handheld devices.

In this letter, I refer to such documents and data as "Evidence." You have a duty to reasonably preserve and retain such Evidence.

This duty includes an obligation to provide notice to all employees or custodians who may be in possession of Evidence. This duty also extends to the preservation and retention of Evidence in the possession or custody of third-parties, such as an internet service provider or a cloud computing provider, if such Evidence is within your control.

You may need to act affirmatively to prevent the destruction of Evidence. This duty may necessitate quarantining certain Evidence to avoid its destruction or alteration. You should consider whether you need to discontinue the routine destruction of Evidence, including discontinuing the recycling of backup tapes or other storage media, and the deletion of emails, "trash," "recycling," "drafts," "sent," or "archived" folders. You should avoid running or installing any drive cleaning, wiping, encrypting, or defragmenting software on hard disks of computers that may contain Evidence.

You should consider preserving any forensically recoverable data by having mirror image copies made of the Evidence. Having said that, any attempt to replicate electronic data without adhering to best practices for data replication could compromise the integrity or contents of such data. Simply making "hard copies" of such Evidence or transforming it to other formats (such as TIFF, or PDF documents) does not constitute preservation of such Evidence. We are prepared to discuss with you proper protocols for replication before you attempt to copy Evidence. The Commission may be able to retain and supervise computer forensic resources to properly and non-invasively create back-up images of Evidence.

NetCirq, LLC
April 7, 2015
Page 3

In addition to preserving the Evidence described above, we further request that you take no action to delete or otherwise compromise any content existing on social networking websites such as "Facebook" or "LinkedIn." Moreover, we request that you take no affirmative action to delete any emails, even emails that may not fit within the parameters set forth above.

\*     \*     \*

While we recognize that this may impose a burden on you, it is absolutely necessary that you fully comply with your obligations to reasonably retain and preserve Evidence. We appreciate your efforts in this regard.

Please contact me if you have any questions, or to meet-and-confer about the matters discussed above. Further, please acknowledge your receipt of this letter by sending me an email or by returning a copy of this letter with your signature in the space provided below.

Sincerely,

Cameron P. Hoffman
Division of Enforcement

I acknowledge that I received this letter
on the __ day of _____, 2015:

_____

## Hoffman, Cameron

| | |
|---|---|
| **From:** | Hoffman, Cameron |
| **Sent:** | Wednesday, May 06, 2015 3:03 PM |
| **To:** | John Corrigan |
| **Subject:** | RE: Netcirq, LLC |
| **Attachments:** | Netcirq Document Subpoena (5-6-15).pdf |

Mr. Corrigan,

Please see attached.

Regards,
Cameron

---

**From:** John Corrigan [mailto:jcorrigan@corriganbaker.com]
**Sent:** Wednesday, May 06, 2015 9:00 AM
**To:** Hoffman, Cameron
**Subject:** RE: Netcirq, LLC

Thank you Cameron, 9:30 PST on the 15th (Fri) works for me.  Call me on 914.468.0191 (business line).

Appreciate the focus on the subpoena being as well defined as it can be as Kristen is just doing a few private placement transactions for her corporate clients over last few years while raising kids.

Regards,

John P. Corrigan
Corrigan, Baker & Levine, LLC
140 Grand Street, Ste. 501
White Plains, NY 10601
(w) 914.468.0191
(c) 914.424.1444
(f) 914.339.0608
www.corriganbaker.com

**From:** Hoffman, Cameron [mailto:HoffmanC@sec.gov]
**Sent:** Wednesday, May 06, 2015 11:54 AM
**To:** John Corrigan
**Subject:** RE: Netcirq, LLC

Mr. Corrigan,

Thank you for your reply, and your confirmation regarding document preservation.  How about 9:30am Pacific on Thursday 5/14 or Friday 5/15 for a call?  In the interim, I have prepared a document subpoena to Netcirq that I will get out to you later today, so that you can get a better sense of what documents and information I would like to receive from Netcirq and have a chance to get your arms around what the company has before our call.

Regards,
Cameron

1

Cameron P. Hoffman
Attorney, Division of Enforcement
U.S. Securities & Exchange Commission
44 Montgomery Street, Suite 2800
San Francisco, CA 94104
(415) 705-2455 (t)
(415) 705-2501 (f)
HoffmanC@sec.gov

---

**From:** John Corrigan [mailto:jcorrigan@corriganbaker.com]
**Sent:** Wednesday, May 06, 2015 8:39 AM
**To:** Hoffman, Cameron
**Subject:** Netcirq, LLC

Dear Attorney Hoffman,

I am Kristen Wade's attorney (and Uncle) and am following up on your letter of April 7, 2015 (attached). I wanted to see what your calendar looks like next week for a time to have a discussion about your expectations and how Kristen can of course cooperate with the SEC's current investigation with the least possible disruption of her business which is essentially a one-band band and not a large company with unlimited resources.

My schedule is quite open next week (especially Wed-Fri) so please let me know if you have any time to talk. If not good for you next week then please propose some dates and times the following week which are good for you.

Also, thank you for your patience as I just moved back here from FL to NY in middle of April so have been running around trying to keep clients happy while finding a new home and welcoming a new partner as of 4/30! Kristen also just got married so we have been like two ships passing in the night leaving VM's to each other trying to connect. Regardless, I can assure you that first and foremost she has not touched any of her records and understands the spoliation implication issue and concerns of the govt. in ensuring potential evidence is protected.

Regards,

John P. Corrigan
Corrigan, Baker & Levine, LLC
140 Grand Street, Ste. 501
White Plains, NY 10601
(w) 914.468.0191
(c) 914.424.1444
(f) 914.339.0608
www.corriganbaker.com



UNITED STATES
SECURITIES AND EXCHANGE COMMISSION
SAN FRANCISCO REGIONAL OFFICE
44 Montgomery Street
SUITE 2800
SAN FRANCISCO, CALIFORNIA 94104

DIRECT DIAL: (415) 705-2455
EMAIL: HOFFMANC@SEC.GOV

May 6, 2015

**EMAIL AND OVERNIGHT DELIVERY**

Netcirq, LLC
c/o John P. Corrigan
Corrigan, Baker & Levine, LLC
140 Grand Street, Ste. 501
White Plains, NY 10601

Re:   In the Matter of Secondary Market Trading by Pre-IPO
       Shareholders (SF-03983)

Dear Mr. Corrigan:

As you know, the staff of the Securities and Exchange Commission is conducting an investigation in the matter identified above. The enclosed subpoena has been issued to Netcirq, LLC (the "Company") as part of this investigation. **The subpoena requires the Company to give us documents.**

Please read the subpoena and this letter carefully. This letter answers some questions the Company may have about the subpoena. You should also read the enclosed SEC Form 1662. The Company must comply with the subpoena. The Company may be subject to a fine and imprisonment if it does not.

**Producing Documents**

*What materials do I have to produce?*

The subpoena requires the Company to give us the documents described in the attachment to the subpoena. **The Company must provide these documents by May 20, 2015.** The attachment to the subpoena defines some terms (such as "document") before listing what the Company must provide.

Please note that if copies of a document differ in any way, they are considered separate documents and the Company must send each one. For example, if the Company has two copies of the same letter, but only one of them has handwritten notes on it, the Company must send both the clean copy and the one with notes.

If the Company prefers, it may send us photocopies of the originals. The Commission cannot reimburse the Company for the copying costs. The copies must be identical to the

Netcirq, LLC
May 6, 2015
Page 2

originals, including even faint marks or print. If the Company chooses to send copies, the Company **must** keep the originals in a safe place. The staff will accept the copies for now, but may require the Company to produce the originals later.

*Do I need to send anything else?*

The Company should enclose a list briefly describing each item it sends. The list should state which paragraph(s) in the subpoena attachment each item responds to. A copy of the subpoena should be included with the documents that are produced.

Passwords for documents, files, compressed archives, and encrypted media should be provided separately either via email addressed to ENF-CPU@sec.gov, or in a separate cover letter mailed separately from the data.

Please include a cover letter stating whether the Company believes it has met its obligations under the subpoena by searching carefully and thoroughly for everything called for by the subpoena, and sending it all to us.

*What if I do not send everything described in the attachment to the subpoena?*

The subpoena requires the Company to send all the materials described in it. If, for any reason—including a claim of attorney-client privilege—the Company does not produce something called for by the subpoena, the Company should submit a list of what it is not producing. The list should describe each item separately, noting:

- its author(s);

- its date;

- its subject matter;

- the name of the person who has the item now, or the last person known to have it;

- the names of everyone who ever had the item or a copy of it, and the names of everyone who was told the item's contents; and

- the reason the Company did not produce the item.

If the Company withholds anything on the basis of a claim of attorney-client privilege or attorney work product protection, it should also identify the attorney and client involved.

*Where should I send the materials?*

Please deliver the production, along with any passwords for encrypted media, to **both** of the following **two** recipients:

Cameron P. Hoffman
U.S. Securities and Exchange Commission
San Francisco Regional Office
44 Montgomery Street, Suite 2800
San Francisco, CA  94104

Netcirq, LLC
May 6, 2015
Page 3

ENF-CPU
U.S. Securities and Exchange Commission
100 F St., N.E., Mailstop 5973
Washington, DC 20549-5973

For smaller electronic productions under 10MB in size, the materials may be emailed to the following email address: ENF-CPU@sec.gov.

**Other Important Information**

*May I have a lawyer help me respond to the subpoena?*

Yes. The Company has the right to consult with and be represented by its own lawyer in this matter. We cannot give you legal advice.

*What will the Commission do with the materials I send and the testimony I provide?*

The enclosed SEC Form 1662 includes a List of Routine Uses of information provided to the Commission. This form has other important information for you. Please read it carefully.

*Has the Commission determined that anyone has done anything wrong?*

This investigation is a non-public, fact-finding inquiry. We are trying to determine whether there have been any violations of the federal securities laws. The investigation and the subpoena do not mean that we have concluded that the Company or anyone else has broken the law. Also, the investigation does not mean that we have a negative opinion of any person, entity or security.

*Important Policy Concerning Settlements*

Please note that, in any matter in which enforcement action is ultimately deemed to be warranted, the Division of Enforcement will not recommend any settlement to the Commission unless the party wishing to settle certifies, under penalty of perjury, that all documents responsive to Commission subpoenas and formal and informal document requests in this matter have been produced.

*I have read this letter, the subpoena, and the SEC Form 1662, but I still have questions. What should I do?*

If the Company has any other questions, please contact me at (415) 705-2455.

Sincerely,

Cameron P. Hoffman
Attorney, Division of Enforcement

Enclosure:     Subpoena
               SEC Form 1662



## SUBPOENA

# UNITED STATES OF AMERICA
## SECURITIES AND EXCHANGE COMMISSION

### In the Matter of Secondary Trading by Pre-IPO Shareholders (SF-03983)

To:  Netcirq, LLC
     c/o John P. Corrigan
     Corrigan, Baker & Levine, LLC
     140 Grand Street, Ste. 501
     White Plains, NY 10601

☒  **YOU MUST PRODUCE** everything specified in the Attachment to this subpoena to officers of the Securities and Exchange Commission, at the place and by the date and time specified below:

44 Montgomery Street, Suite 2800, San Francisco, CA 94104, **May 20, 2015, 5:00 p.m.**

☐  **YOU MUST TESTIFY** before officers of the Securities and Exchange Commission, at the place, date and time specified below:

**FEDERAL LAW REQUIRES YOU TO COMPLY WITH THIS SUBPOENA.**
Failure to comply may subject you to a fine and/or imprisonment.

By: _____          Date:  May 6, 2015
    Cameron P. Hoffman
    U.S. Securities and Exchange Commission
    44 Montgomery Street, 28th Floor
    San Francisco, CA 94104
    (415) 705-2455

I am an officer of the Securities and Exchange Commission authorized to issue subpoenas in this matter. The Securities and Exchange Commission has issued a Formal Order authorizing this investigation under Section 21(a) of the Securities Exchange Act of 1934.

NOTICE TO WITNESS:   If you claim a witness fee or mileage, submit this subpoena with the claim voucher.

## ATTACHMENT

### Subpoena to Netcirq, LLC
### In the Matter of Secondary Market Trading by Pre-IPO Shareholders (SF-03983)
### May 6, 2015

### INSTRUCTIONS

This subpoena requires the production of certain documents and items, as specified in the section entitled "Production" below. The required documents and information should be produced in accordance with the following requirements:

A.   You must submit all items required to be produced by the subpoena that are in your possession, custody, or subject to your control, regardless of whether the documents are in your possession.

B.   If you claim attorney-client privilege, or any other privilege or protection from production, provide a list of the documents that you claim are privileged or protected, indicating the date prepared, authors, all recipients, the subject matters of the document, and the privilege or protection claimed, sufficiently identifying the documents to permit the staff to determine whether to request an in camera inspection by a federal district court judge.

C.   Produce the entirety of each and every document or item described below, without alteration, deletion, redaction, or obliteration of any information contained therein, even though such information is not specifically requested.

D.   The following rules of construction apply to this subpoena and attachment: (1) the connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the attachment all responses that might otherwise be construed to be outside of its scope; and (2) the use of the singular form of any word includes the plural and vice versa.

### DEFINITIONS

A.   The term "NETCIRQ" means Netcirq, LLC, and all of its parents, U.S. and non-U.S. subsidiaries, divisions, affiliates, predecessors, successors, officers, directors, employees, agents, partners, limited partners, and independent contractors, as well as aliases, code names, trade names, or business names used by, or formerly used by, any of the foregoing.

B.   The terms "DOCUMENT" and "DOCUMENTS" mean any and all records, whether drafts or final versions, originals or annotated or non-identical copies, however and by whomever created, produced, or stored (manually, mechanically, electronically, or otherwise), including, but not limited to, books, papers, files, notes, account statements, confirmations, reports, correspondence, letters, memoranda, electronic files, computer records, computer